Timothy JORDAN, Appellant,

v.

The STATE of Texas.

Nos. 1929–99, 1930–99.

Court of Criminal Appeals of Texas.

June 27, 2001.

Angela L. Cameron, Houston, for Appellant.

Barbara A. Drumheller, Assist. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

In cause no. 1929–99, appellant pled guilty to theft and was placed on "regular" community supervision. In cause no. 1930–99, appellant pled guilty to robbery and was placed on deferred adjudication community supervision. The State subsequently filed motions to revoke in both cases on the ground that appellant possessed cocaine. The trial court considered both motions during the same hearing and revoked appellant's community supervision in both cases. Appellant later filed a motion for new trial, alleging that his pleas in both cases were involuntary. The trial court conducted a hearing on the motion in which live testimony was taken. After hearing the testimony, the trial court denied the motion.

Appellant appealed both cases and alleged, among other complaints, that the trial court erred in denying his motion for new trial. The Court of Appeals refused to address the merits of this point of error in either case on the ground that appellant should have raised this claim in an appeal of the imposition of community supervision.[1] In the regular probation case the Court of Appeals relied upon *Whetstone*,[2] and in the deferred adjudication case that court relied upon *Manuel*.[3] On petition for discretionary review, appellant contends that there is a "fundamental error" exception to the general rule that matters relating to the original plea cannot be raised in an appeal from revocation. He points to past cases recognizing exceptions to the general rule in the context of regular probation, and he argues that these exceptions also apply in the deferred adjudication context.

### A. Exceptions to *Whetstone* and *Manuel*

■ Today in *Nix*, we have reaffirmed the void judgment exception to the prohibitions against attacking the original conviction on revocation of regular probation, and we have recognized that the exception also applies to revocations of deferred adjudication probation.[4] But we also recog-

nized that "a judgment is void only in very rare situations—usually due to a lack of jurisdiction."[5] An "involuntary plea" does not constitute one of those rare situations.[6]

■ However, past cases involving regular probation have also recognized a "habeas corpus" exception to the prohibition against attacking the original conviction upon revocation.[7] We have held that a probationer may litigate at the revocation hearing any claims that would be cognizable on a writ of habeas corpus.[8] And we have held that a court of appeals must address the merits of claims litigated in this manner.[9] We reasoned that, when a probationer raises such claims, he has essentially invoked the trial court's writ of habeas corpus jurisdiction, and for purposes of judicial economy, we do not require the filing of a separate application.[10]

In the present case, appellant litigated his involuntariness claim before the trial court at the motion for new trial hearing. Live testimony at a hearing was taken, and the trial court ruled on the motion. An involuntariness claim is the type of claim that is cognizable on a writ of habeas corpus. Under these circumstances, appellant would appear to have satisfied the requirements of the habeas corpus excep-

---

1. *Jordan v. State*, No. 01–98–00564 CR, slip op., 1999 WL 568726 (Tex.App.—Houston [1st Dist], August 5, 1999)(unpublished).

2. *Whetstone v. State*, 786 S.W.2d 361, 363 (Tex.Crim.App.1990).

3. *Manuel v. State*, 994 S.W.2d 658 (Tex.Crim.App.1999).

4. *Nix v. State*, — S.W.3d —, —, slip op. at 4, 2001 WL 717453 (Tex.Crim.App. June 27, 2001).

5. *Id.*

6. *Custis v. United States*, 511 U.S. 485, 496–497, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994);

*Nix*, — S.W.3d at —, slip op. at 4–6, 2001 WL 717453.

7. *Nix*, — S.W.3d at — – —, slip op. at 7–8, 2001 WL 717453.

8. *Carter v. State*, 641 S.W.2d 557, 557–558 (Tex.Crim.App.1982).

9. *Warren v. State*, 744 S.W.2d 614, 614–615 (Tex.Crim.App.1988).

10. *See Carter*, 641 S.W.2d at 557 (separate habeas hearing not required); *Warren*, 744 S.W.2d at 614–615 (habeas corpus exception invoked by a motion to dismiss).

tion as set forth in *Carter* and *Warren*. However, we now abandon the habeas corpus exception as set forth in those cases because it creates unnecessary confusion and fails to satisfy its original rationale of promoting judicial economy.

■■■ Under the doctrine of *stare decisis*, we generally adhere to past precedent because doing so "promotes judicial efficiency and consistency, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."[11] But overruling precedent is acceptable under certain circumstances.[12] Some factors supporting the overruling of precedent are: (1) when the original rule is flawed from the outset, (2) when the reasons underlying the precedent have been undercut with the passage of time, and (3) when the rule consistently creates unjust results or places unnecessary burdens upon the system.[13]

Under our recent decision in *Cooper*, a plea-bargaining defendant on appeal may not attack the voluntariness of his plea.[14] But *Carter* and *Warren* would permit that same defendant to challenge the voluntariness of his plea upon revocation, even though *Whetstone* and *Manuel* generally prevent probationers from attacking the original plea in a revocation proceeding. This seemingly illogical result could be justified under *Carter* and *Warren* because those cases hold that raising such a claim on revocation would be a functional litigation of a writ of habeas corpus, and *Cooper* recognizes that a writ of habeas corpus is

the proper and best avenue for litigating such a claim.[15]

However, we find that the concept of a "functional" writ of habeas corpus has the potential to generate confusion and does not satisfy the goal of improving judicial economy. Failing to properly label a claim "writ of habeas corpus" generates the risk that a trial or appellate court will likewise fail to recognize that a functional writ of habeas corpus has been litigated—requiring correction by this Court and further proceedings. In addition, litigation in this manner evades the requirements of Article 11.14, which, among other things, requires that an oath be made "that the allegations of the petition are true, according to the belief of the petitioner."[16] Finally, if such a claim is raised for the first time at a revocation hearing, the proceedings might be delayed by a continuance to allow the State to prepare its response.

■■■ A writ of habeas corpus may be filed under Article 11.08 or 11.09 even though a person has not been finally convicted of an offense.[17] Nothing prevents the probationer from filing an Article 11.08 or 11.09 writ application after the State has filed a motion to revoke, and nothing prevents the trial court from considering the application along with the State's motion to revoke probation. We hold that, if a probationer wishes to invoke the trial court's writ of habeas corpus jurisdiction, he must follow the proper procedures outlined in Article 11.

---

11. *Hammock v. State,* 46 S.W.3d 889, 892 (Tex.Crim.App.2001).

12. *Id.*

13. *Id.* This is not an exclusive list.

14. *Cooper v. State,* 45 S.W.3d 77 (Tex.Crim. App.2001).

15. *See Cooper,* 45 S.W.3d at 82–83.

16. *See* Article 11.14(5). All references to articles refer to the Texas Code of Criminal Procedure.

17. Article 11.08 applies to felony cases in which "a person is confined after indictment on a charge of felony." Article 11.09 applies to misdemeanor cases.

In the present case, appellant did not follow the procedures outlined in Article 11, and hence, the Court of Appeals did not err in failing to address his claim.[18]

## B. Retroactivity

 We take this opportunity to determine whether the rule we announce will be applied retroactively. Because we have overruled precedent, there is no question that our rule is a "new" one.[19] Whether a new rule of nonconstitutional origin that benefits the accused should be applied retroactively is evaluated under the balancing test set out in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), in which the following factors are balanced:

(a) the purpose to be served by the new standards,

(b) the extent of reliance by law enforcement authorities on the old standards, and

(c) the effect on the administration of justice of a retroactive application of the new standards.[20]

The test is somewhat parallel but applied somewhat differently when the new rule is adverse to the accused. When a new rule would adversely effect the accused, we balance the following factors:

(a) the purpose to be served by the new standards,

(b) the extent to which accused persons have relied and the prejudice they may suffer from application of the new standards, and

(c) the effect on the administration of justice of a retroactive application of the new standards.

The purpose of our holding today is to avoid confusion from the use of an informal procedure. While accused persons who have relied on our prior cases may lose their ability to have a trial court decide their claims before revocation, they still have an avenue after revocation in which their claims may be heard. Finally, the administration of justice will benefit from streamlining the process and avoiding confusion that would be engendered by the old rule. Hence, our decision will apply retroactively.

The judgment of the Court of Appeals is affirmed.

JOHNSON, J., filed a dissenting opinion in which MEYERS, PRICE, and HOLLAND, JJ., joined.

JOHNSON, J., joined by MEYERS, PRICE and HOLLAND, JJ., dissenting.

Appellant was placed on "regular" community supervision following his plea of guilty to theft, and he was placed on deferred adjudication community supervision following his plea of guilty to robbery. Following revocation of community supervision in both cases, he challenged his pleas of guilty as involuntary. The majority today overrules case law permitting such a challenge with regard to "regular" community supervision, and then applies the rationale for that action to the deferred adjudication context. Because its decision is another in a recent line of cases which cut back on appellate rights of defendants on questionable bases, and because it overrules long-established precedent, I respectfully dissent.

---

**18.** Although appellant has lost the opportunity to raise his claims at the time of revocation, he is still free (after his case becomes final) to raise any cognizable habeas corpus claims in a postconviction writ under Article 11.07.

**19.** *See Nix,* —— S.W.3d at ——, slip op. at 9, 2001 WL 717453.

**20.** *Taylor v. State,* 10 S.W.3d 673, 678 (Tex. Crim.App.2000).

Only two years ago, this court held that a defendant put on deferred adjudication was required to raise issues relating to the original plea proceeding in an appeal taken when the deferred adjudication community supervision was first imposed; such issues could not be raised following revocation of the deferred adjudication. *Manuel v. State*, 994 S.W.2d 658 (Tex.Crim.App. 1999). We did so despite statutory language indicating otherwise,[1] and despite the fact that the precedent on which we relied had been undercut by our current approach to statutory interpretation.[2]

Little more than a year later, this court summarily held, without explanation, that *Manuel* precluded a defendant from raising a claim concerning the voluntariness of his plea following revocation of his deferred-adjudication status. *Daniels v. State*, 30 S.W.3d 407 (Tex.Crim.App.2000). This, despite the fact that *Manuel* was specifically premised on equating "regular" community supervision with deferred adjudication community supervision, in regard to appealability of issues. *Manuel*, 994 S.W.2d at 661-2. We have long permitted challenges to the original conviction on an appeal from an order revoking probation, i.e., "regular" community supervision, when they could be raised in a post-conviction habeas corpus proceeding.[3] Since our case law clearly establishes that a challenge to "fundamental errors"[4] including a

1. Article 42.12, § 5(b) of the Texas Code of Criminal Procedure provides that "[a]fter an adjudication of guilt, *all proceedings, including* assessment of punishment, pronouncement of sentence, granting of community supervision, and *defendant's appeal continue as if the adjudication of guilt had not been deferred.*" (Emphasis added.) *See, e.g., Webb v. State*, 20 S.W.3d 834, 836 n. 2 (Tex.App.—Amarillo 2000, no pet.) (noting *Manuel*'s potential conflict with the legislative dictate of art. 42.12, § 5 of the Texas Code of Criminal Procedure, since in denying defendants the opportunity to assert on appeal perfected after guilt is adjudicated those issues which could have been asserted before guilt was adjudicated, the decision does not treat "all proceedings" as if the adjudication of guilt had not been deferred); *Clark v. State*, 997 S.W.2d 365, 368 (Tex.App.—Dallas 1999, no pet.) (noting that *Manuel* has nullified the language in art. 42.12, § 5(b) that requires all proceedings, including the defendant's appeal, to continue as if adjudication had not been deferred).

2. The decision in *Manuel* was predicated on a line of cases that purported to interpret art. 44.01(j), and that began with *Dillehey v. State*, 815 S.W.2d 623 (Tex.Crim.App.1991). *Manuel*, 994 S.W.2d at 661. In *Dillehey*, the court's rationale in interpreting art. 44.01(j) was explicitly based on what it perceived to be the intent of the legislature, based on Senate floor discussions, rather than on the text of the statute, which would have led to a much different result. *Dillehey*, 815 S.W.2d at 624-6. Less than six months after *Dillehey*, we rendered a decision in which we held that our approach to statutory interpretation should, except in narrowly prescribed situations, focus upon the literal text of the statute. *Boykin v. State*, 818 S.W.2d 782, 785-6 (Tex.Crim.App.1991). As was subsequently noted by Judge Benavides, *Boykin* effectively overruled our approach to statutory interpretation in *Dillehey*. *See Ex parte Crouch*, 838 S.W.2d 252, 256 (Tex.Crim.App.1992) (Benavides, J., concurring). Thus, *Dillehey*'s interpretation of art. 44.01(j) is questionable and makes *Manuel* questionable, as well.

3. *See, e.g., Dinnery v. State*, 592 S.W.2d 343, 350 (Tex.Crim.App.1979) (op. on reh'g) (citing *Ramirez v. State*, 486 S.W.2d 373 (Tex.Crim. App.1972)); *Bailey v. State*, 559 S.W.2d 957, 957 (Tex.Crim.App.1978); *Alvarez v. State*, 995 S.W.2d 185, 187 (Tex.App.—San Antonio 1999, pet. ref'd); *Puckett v. State*, 801 S.W.2d 188, 192 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd); *Trcka v. State*, 744 S.W.2d 677, 680 (Tex.App.—Austin 1988, pet. ref'd); *Smola v. State*, 736 S.W.2d 265, 266 (Tex. App.—Austin 1987, no pet.).

4. *See, e.g., Dinnery*, 592 S.W.2d at 350-1; *Huggins v. State*, 544 S.W.2d 147, 148 (Tex. Crim.App.1976); *Puckett*, 801 S.W.2d at 191-2; *Trcka*, 744 S.W.2d at 680; *Smola*, 736 S.W.2d at 266.

claim that a plea was involuntarily, may be raised in an application for a writ of habeas corpus,[5] the logic of *Manuel* dictated the opposite of the result reached in *Daniels*.

Now, apparently recognizing that *Daniels* is at odds with our case law, a majority of the court today undertakes to "fix" this problem by overruling the case law with which *Daniels* is at odds. *Ante*, at 785–87. The stated rationales for such a decision are judicial economy and reduction of confusion. *Ante*, at 785–86. With regard to confusion, a review of appellate case law indicates that neither we nor the intermediate courts of appeal have shown much confusion in ability to dispose of such claims.[6] As to judicial economy, it seems to me to exact too high a price. Recently, in *Cooper v. State*, 45 S.W.3d 77 (Tex. Crim.App.2001), a majority of this court held that a plea-bargaining defendant could not appeal the voluntariness of his plea. The rationale in that case was also partially predicated on an economic decision, i.e., a cost-benefit analysis. *Id.* at 81–82. The effect of these decisions is to value "economy" at the expense of fundamental rights of criminal defendants. I dissent.

---

5. *See, e.g., Ex parte McCullough*, 966 S.W.2d 529, 532 n. 1 (Tex.Crim.App.1998) (noting that, generally, claims of involuntariness of a plea are cognizable on habeas corpus); *Ex parte Moody*, 991 S.W.2d 856 (Tex.Crim.App. 1999) (holding, on application for writ of habeas corpus, that applicant's guilty plea was involuntary); *Ex parte Morrow*, 952 S.W.2d 530 (Tex.Crim.App.1997) (holding, on application for writ of habeas corpus, that applicant's guilty plea was not shown to be involuntary), *cert. denied*, 525 U.S. 810, 119 S.Ct. 40, 142 L.Ed.2d 31 (1998); *Ex parte Tovar*, 901 S.W.2d 484 (Tex.Crim.App.1995) (holding, on application for writ of habeas corpus,

that applicant's guilty plea was not shown to be involuntary); *Ex parte Bittikoffer*, 802 S.W.2d 701 (Tex.Crim.App.1991) (holding, on application for writ of habeas corpus, that applicant's guilty pleas were involuntary); *Ex parte Stephenson*, 722 S.W.2d 426 (Tex.Crim. App.1987) (holding, on application for writ of habeas corpus, that applicant's guilty plea was involuntary); *Ex parte Smith*, 678 S.W.2d 78 (Tex.Crim.App.1984) (holding, on application for writ of habeas corpus, that applicant's guilty plea was involuntary).

