NUMBER 13-08-00553-CR


 

COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


VICENTE DAVILA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 94th District Court


 of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Benavides



 Appellant, Vicente Davila, appeals the revocation of his community supervision. 
Tex. Code Crim. Proc. Ann. art. 42.12 § 23(b) (Vernon Supp. 2009). By four issues,
Davila argues that (1) the original conviction for repeated family violence assault, for which
he received a probated sentence and community supervision, was based solely on
perjured evidence in violation of his due process rights; (2) he received ineffective
assistance of counsel during the revocation hearing; (3) the State failed to tender
exculpatory evidence; and (4) the punishment assessed was disproportionate to the
seriousness of the alleged offense. We affirm.

I. Background

 On April 6, 2006, Davila was indicted for repeated family violence assault. See Tex.
Penal Code Ann. 22.01(a), (b)(2)(A) (Vernon Supp. 2009). (1) This charge was based on a
report by his wife, Genoviva Davila, that Davila had assaulted her. On April 26, 2006,
Davila pleaded guilty, and pursuant to a plea bargain, he was sentenced to five years'
imprisonment in the Texas Department of Criminal Justice--Institutional Division and
assessed a $1,500 fine and court costs. The trial court suspended the prison sentence for
five years and placed Davila on community supervision. See Tex. Code Crim. Proc. Ann.
art. 42.12 § 3(a).

 On August 24, 2006, the State moved to revoke Davila's community supervision,
alleging that he violated the terms of his community supervision by (1) using alcohol; (2)
using marijuana; (3) using crack cocaine, (4) failing to report to his supervision officer; and
(5) failing to pay the fine and fees assessed by the court. On September 18, 2006, the trial
court heard the revocation motion, and Davila pleaded "true" to the State's allegations. 
The trial court did not revoke Davila's community supervision. Instead, the court ordered
Davila to serve a term of confinement and treatment in the Substance Abuse Felony
Program (SAFP) and continued his community supervision. See id. art. 42.12 § 23(a)(4). 
 On July 21, 2008, the State filed a second motion to revoke Davila's community
supervision. This motion alleged that Davila violated the terms of his community
supervision by: (1) failing to pay for his urinalysis tests; (2) testing positive for marijuana;
(3) admitting to the use of marijuana; (3) failing to report to his supervision officer; (4) failing
to pay fines and costs assessed by the court; and (5) failing to attend individual and group
counseling sessions. The trial court held a hearing on September 5, 2008, and Davila
pleaded "true" to all of the allegations in the second motion to revoke. 

 The State then presented evidence on punishment. Olga Hernandez testified that
she is Davila's probation officer. She testified that Davila had nine convictions for "assault
family violence." She recommended that the court revoke Davila's community supervision,
and if not, place him in SAPF again. On cross-examination, the following exchange
occurred:

 Defense counsel: And the victim--the alleged victim in this case was
Genoviva?

 

 The Court: Not the alleged victim, the victim because he's been
convicted.

 

 Defense counsel: Okay, we'll get there here in a second, Your Honor. Is
that his wife?

 

 Hernandez: Yes, sir.

 

 Defense counsel: Okay. Were there any pictures in that case?

 

 Hernandez: Not in my file.

 

 Defense counsel: Not in your file. You--did you--did you know that the
victim did not want to prosecute in this case?


 Hernandez: No, I did not.

 

 Defense counsel: Okay.

 

 The Court: But that's irrelevant, really, because he's been
convicted. He's been convicted a bunch of times of
assaulting that victim.

 

 Defense counsel: Well, Your Honor--

 

 The Court: I mean, look, he may--he may disagree with that but it
doesn't matter to me because he's been found guilty.


 Davila then testified. On direct examination, Davila stated that he is very sick with
cirrhosis of the liver, hepatitis C, tuberculosis, and "lack of [potassium]." He explained that
he was getting weaker by the day and that the doctor told him he had only two more years
to live. He further testified that he has an enlarged heart and bleeding ulcers. On cross-examination, the State asked whether Davila brought any of his medical records supporting
his medical history, and Davila said no. The State referred to probation records indicating
that Davila submitted a medical worksheet to his probation officer on February 1, 2009
stating that he was "pain free." Davila denied that the medical worksheet was correct. 
Davila then testified that Genoviva had lied to the police when she reported the original
assault in 2006.

 After Davila finished testifying, Genoviva raised her hand and was recognized by the
court. Genoviva was sworn, and before a question could be asked of her, she testified that
she saw her father die from liver cirrhosis, and therefore, she would "make up lies just to
get [Davila] locked up because [she] would see him drinking." In a discussion with the trial
court, Genoviva denied that Davila was violent and claimed he was a good provider. She
admitted that on the night that she claimed that Davila assaulted her in 2006, she was not
at home and that she told her twelve-year-old daughter to lie to the police to corroborate
her story. Neither Davila's defense counsel nor the State asked any questions. The trial
court then stated on the record:

 I mean, look, this is your stuff. I mean, I didn't get you here. You know, I
didn't put you here. You put yourself here. It's not your attorney's fault, it's
not the State's fault, it's not any of the other people's fault, it's not your
family's fault, and I don't believe the fact that your wife said she was lying
about it. I just don't believe her.


 I think that you are not a bad guy when you get up in the morning and
you go to work and when you're not drinking, but I think the minute you hit
that bottle you turn into a bad person, and the fact that you're shaking your
head makes me believe you haven't heard a thing so I hereby revoke your
community supervision probation, sentence you to five years TDC.


On September 5, 2008, the trial court signed an order revoking Davila's community
supervision and imposing the original sentence. The trial court certified Davila's right to
appeal on September 16, 2008.

 On September 29, 2008, Davila filed a motion for new trial and a motion in arrest
of judgment. In the motion, Davila alleged that there was "[e]vidence of medical records
stating that [Davila] is ill and his health is critical due to contagious diseases[,] and this
evidence was not introduced at [Davila's] trial for consideration by this Honorable Court." 
Davila submitted an affidavit by Cathy Clark, Davila's attorney, which stated that evidence
existed supporting his medical claims and the evidence was not introduced into evidence. 
The affidavit, however, did not explain why the evidence was not submitted at the
revocation hearing. On October 7, 2008, Davila submitted medical records and an affidavit
from Irene Martinez, the custodian of records for Christus Spohn Hospital Memorial, in
support of the motion for new trial. These records refer to treatments and hospitalizations
in 2002, 2003, and 2004.

 On October 30, 2008, the trial court held a hearing on the motion for new trial. At
the hearing on the motion for new trial, Davila's counsel informed the court that because
Genoviva recanted her statements about Davila's assault, she was prosecuted for making
false statements to the police and to the district attorney. However, no evidence regarding
the arrest was tendered or admitted at the hearing. Davila testified about his medical
conditions, and the trial court denied the motion for new trial. This appeal ensued.

II. Perjured Evidence

 By his first issue, Davila argues that his due process rights under the United States
Constitution were violated because his conviction for repeat family violence assault was
based on Genoviva's allegations, which she recanted. See U.S. Const. amend. XIV. He
argues that a conviction based on perjured testimony cannot stand. See Ex parte
Carmona, 185 S.W.3d 492, 496 (Tex. Crim. App. 2006). The State argues that we lack
jurisdiction to consider this argument because Davila is not entitled to challenge the original
adjudication of guilt on appeal from a revocation of community supervision. We agree with
the State.

 Article 44.12, section 23(b) of the Texas Code of Criminal Procedure provides a
criminal defendant's appellate remedies after the revocation of community supervision: 

 The right of the defendant to appeal for a review of the conviction and
punishment, as provided by law, shall be accorded the defendant at the time
he is placed on community supervision. When he is notified that his
community supervision is revoked for violation of the conditions of
community supervision and he is called on to serve a sentence in a jail or in
the Texas Department of Criminal Justice, he may appeal the revocation.


Tex. Code Crim. Proc. Ann. art. 44.12 § 23(b). Davila was convicted of repeat family
violence assault upon his guilty plea and sentenced to five years' imprisonment in 2006. 
That sentence was probated by the trial court, and Davila was placed on community
supervision, also in 2006. Any appeal of the conviction and punishment should have
occurred in 2006 at the time Davila was placed on community supervision. See id.; Jordan
v. State, 54 S.W.3d 783, 786 (Tex. Crim. App. 2001). The revocation of Davila's
community supervision did not result from Genoviva's perjured testimony regarding the
assault, but from Davila's pleas of "true" to the alleged violations of the conditions of his
community supervision. Davila's remedy, if any, for the original adjudication of guilt for
repeat family violence assault is by way of a writ of habeas corpus. (2) See Carmona, 185
S.W.3d at 496-97; Jordan, 54 S.W.3d at 787. Accordingly, we overrule Davila's first issue.

III. Ineffective Assistance of Counsel

 By his second issue, Davila argues that he received ineffective assistance of
counsel during the revocation based on several alleged failures by his trial counsel. We
disagree. 

 We apply the two-pronged Strickland analysis to determine whether counsel's
representation was so deficient that it violated a defendant's constitutional right to effective
assistance of counsel. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); 
Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.-Corpus Christi 2006, no pet.); see
Strickland v. Washington, 466 U.S. 668, 684 (1984). An appellant claiming a Strickland
violation must establish that (1) "his attorney's representation fell below an objective
standard of reasonableness, and (2) there is a reasonable probability that, but for his
attorney's errors, the result of the proceeding would have been different." Jaynes, 216
S.W.3d at 851; see Strickland, 466 U.S. at 687. 

 We afford great deference to trial counsel's ability--"an appellant must overcome
the strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance." Jaynes, 216 S.W.3d at 851. The appellant must prove both
elements of the Strickland test by a preponderance of the evidence. Munoz v. State, 24
S.W.3d 427, 434 (Tex. App.-Corpus Christi 2000, no pet.). Allegations of ineffectiveness
must be firmly founded in the record. Mallet v. State, 65 S.W.3d 59, 63 (Tex. Crim. App.
2001). The record on direct appeal will generally be insufficient to show that counsel's
representation was so deficient as to meet the first prong of the Strickland analysis. 
Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). An appropriate record,
which should include counsel's reasons for his actions, is usually prepared at a hearing on
a motion for new trial or developed by a writ of habeas corpus. Batiste, 217 S.W.3d 74,
83 (Tex. App.-Houston [1st Dist.] 2006, no pet.). "'[T]rial counsel should ordinarily be
afforded an opportunity to explain his actions before being denounced as ineffective.'" 
Goodspeed, 187 S.W.3d at 392 (quoting Rylander, 101 S.W.3d at 111). Absent an
opportunity for the attorney to explain his actions, an appellate court should not "find
deficient performance unless the challenged conduct was 'so outrageous that no
competent attorney would have engaged in it.'" Id. (quoting Garcia v. State, 57 S.W.3d
436, 440 (Tex. Crim. App. 2001)).

 First, Davila argues that although his attorney called Genoviva as a witness, he
failed to examine her to establish her credibility. (3) Davila argues that Genoviva's false
allegations and credibility affected his ability to receive a fair trial "because her accusations
coupled with previous court proceedings available to the Court tainted the Court's view of
[Davila] causing the Court to revoke [Davila's] community supervision, sentencing him to
five (5) years incarceration." Davila further argues that his attorney failed to request a
continuance of the hearing to investigate Genoviva's lies, and this was not mere trial
strategy. 

 Davila has not made a proper showing that his counsel was ineffective by failing to
cross-examine Genoviva and by failing to request a continuance to further investigate her
testimony. The trial court expressly stated on the record that it did not believe that
Genoviva's testimony was relevant because Davila had already been convicted of the
assault, and that issue was not before the court. We believe that it was plausible trial
strategy for Davila's counsel not to cross-examine Genoviva, given that she had already
testified that she lied about the allegation of assault and that the trial court had already
determined her testimony was irrelevant. We also disagree that the record shows that
Davila's counsel was ineffective by failing to request a continuance to investigate
Genoviva's testimony. Davila's counsel knew about the perjury at the time of the
revocation hearing because he alluded to it during his cross-examination of Hernandez and
was prepared to call Genoviva as a witness. Although Davila filed a motion for new trial,
neither that motion nor any of the affidavits attached thereto discuss the trial strategy of
Davila's counsel. On this record, we cannot say that Davila has rebutted the strong
presumption of effective counsel. Id. 

 Next, Davila argues that his defense counsel failed to introduce medical history
evidence at the revocation hearing, which would have shown that Davila should have been
placed in a medical facility or an out-patient treatment center. The State points out that the
medical records that were submitted in support of Davila's motion for new trial are records
from hospitalizations or treatments in 2000, 2002, 2003, and 2004. The evidence
presented did not show Davila's current physical condition. Nevertheless, at the revocation
hearing, Davila himself testified to his medical history during questioning by his attorney. 
The motion for new trial did not provide any explanation for counsel's failure to introduce
the medical records, and on this record, we cannot say that Davila has rebutted the strong
presumption of effective counsel. Id. Accordingly, we overrule his second issue.

IV. Withholding Exculpatory Evidence

 By his third issue, Davila argues that at the time of the revocation hearing, the State
"was aware or should have been aware that [Genoviva] had an outstanding warrant for her
arrest for False Reporting to a Police Officer for making a previous false complaint against
[Davila]," and the prosecutor failed to disclose this knowledge to Davila's counsel or to the
trial court. Davila argues that on September 15, 2008, ten days after the hearing on the
motion to revoke, Genoviva pleaded guilty to the charges and was sentenced to twenty
days in jail and assessed court costs. Davila attached a printout to his brief as "Exhibit A,"
which purports to be a document printed from the Nueces County District Clerk's Criminal
Case search website. This document shows that a person named "Genoveva Hernandez"
was arrested on September 15, 2008, after the hearing on the motion to revoke, for making
a false report to law enforcement. We do not consider evidence attached to briefs that was
not part of the record in the trial court. See Ramirez v. State, 104 S.W.3d 549, 551 n.9
(Tex. Crim. App. 2003); Hartman v. State, 198 S.W.3d 829, 842 (Tex. App.-Corpus Christi
2006, pet. struck). Because Davila has not supported his argument with references to the
trial court record, we hold this issue is inadequately briefed. See Tex. R. App. P. 38.1(i). 
Accordingly, we overrule his third issue.

V. Disproportionate Punishment

 By his fourth issue, Davila argues that the sentence he received is disproportionate
to the severity of the crime in violation of his Eighth Amendment right to be free from cruel
and unusual punishment. See U.S. Const. amend. VIII. The State argues that Davila
waived this complaint by failing to object on this ground in the trial court. We agree. Davila
made no objection to his sentence in the trial court at the time of sentencing or in any post-trial motion. Accordingly, he has failed to preserve this issue for our review, and we
overrule his fourth issue. See Schneider v. State, 645 S.W.2d 463, 466 (Tex. Crim. App.
1983); Trevino v. State, 174 S.W.3d 925, 927-29 (Tex. App.-Corpus Christi 2005, pet.
ref'd); see also Figueroa v. State, No. 13-08-00115-CV, 2009 WL 3489842, at *1 (Tex.
App.-Corpus Christi Oct. 29, 2009, pet. ref'd) (mem. op., not designated for publication).

VI. Conclusion

 Having overruled all of Davila's issues, we affirm the trial court's judgment.

 

 __________________________

 GINA M. BENAVIDES,

 Justice


Do not publish.

See Tex. R. App. P. 47.2(b)


Delivered and filed the

8th day of July, 2010.
1. Section 22.01 has been amended since Davila was indicted, but the amendments did not
substantively change the portion of the statute under which Davila was charged; rather, the amendments
merely added subdivisions to the text. See Act of May 15, 2007, 80th Leg., R.S., ch. 623, §§ 1, 2, 2007 Tex.
Sess. Law Serv. 1194, 1194-95 (Vernon) (effective Sept. 1, 2007); Act of May 21, 2009, 81st Leg., R.S., ch.
427, § 1, 2009 Tex. Sess. Law Serv. 1019, 1019-1020 (Vernon) (effective Sept. 1, 2009); Act of May 31, 2009,
81st Leg., R.S., ch. 655, § 2, 2009 Tex. Sess. Law Serv. 1484, 1485 (Vernon) (effective Sept. 1, 2009). Thus,
we cite to the current version.
2. We express no opinion on the potential success of a petition for writ of habeas corpus.
3. Davila also states that his counsel was ineffective for failing to "advise him accordingly before his
plea and before trial." It is unclear from the brief what advice Davila was seeking or when. We hold that this
argument is inadequately briefed. See Tex. R. App. P. 38.1(i).