

NUMBER 13-08-00553-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**VICENTE DAVILA,**                                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

### On appeal from the 94th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Benavides

Appellant, Vicente Davila, appeals the revocation of his community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12 § 23(b) (Vernon Supp. 2009). By four issues, Davila argues that (1) the original conviction for repeated family violence assault, for which he received a probated sentence and community supervision, was based solely on

perjured evidence in violation of his due process rights; (2) he received ineffective assistance of counsel during the revocation hearing; (3) the State failed to tender exculpatory evidence; and (4) the punishment assessed was disproportionate to the seriousness of the alleged offense. We affirm.

## I. BACKGROUND

On April 6, 2006, Davila was indicted for repeated family violence assault. *See* TEX. PENAL CODE ANN. 22.01(a), (b)(2)(A) (Vernon Supp. 2009).[1] This charge was based on a report by his wife, Genoviva Davila, that Davila had assaulted her. On April 26, 2006, Davila pleaded guilty, and pursuant to a plea bargain, he was sentenced to five years' imprisonment in the Texas Department of Criminal Justice—Institutional Division and assessed a $1,500 fine and court costs. The trial court suspended the prison sentence for five years and placed Davila on community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3(a).

On August 24, 2006, the State moved to revoke Davila's community supervision, alleging that he violated the terms of his community supervision by (1) using alcohol; (2) using marijuana; (3) using crack cocaine, (4) failing to report to his supervision officer; and (5) failing to pay the fine and fees assessed by the court. On September 18, 2006, the trial court heard the revocation motion, and Davila pleaded "true" to the State's allegations. The trial court did not revoke Davila's community supervision. Instead, the court ordered

---

[1] Section 22.01 has been amended since Davila was indicted, but the amendments did not substantively change the portion of the statute under which Davila was charged; rather, the amendments merely added subdivisions to the text. *See* Act of May 15, 2007, 80th Leg., R.S., ch. 623, §§ 1, 2, 2007 TEX. SESS. LAW SERV. 1194, 1194-95 (Vernon) (effective Sept. 1, 2007); Act of May 21, 2009, 81st Leg., R.S., ch. 427, § 1, 2009 Tex. Sess. Law Serv. 1019, 1019-1020 (Vernon) (effective Sept. 1, 2009); Act of May 31, 2009, 81st Leg., R.S., ch. 655, § 2, 2009 TEX. SESS. LAW SERV. 1484, 1485 (Vernon) (effective Sept. 1, 2009). Thus, we cite to the current version.

Davila to serve a term of confinement and treatment in the Substance Abuse Felony Program (SAFP) and continued his community supervision. *See id.* art. 42.12 § 23(a)(4).

On July 21, 2008, the State filed a second motion to revoke Davila's community supervision. This motion alleged that Davila violated the terms of his community supervision by: (1) failing to pay for his urinalysis tests; (2) testing positive for marijuana; (3) admitting to the use of marijuana; (3) failing to report to his supervision officer; (4) failing to pay fines and costs assessed by the court; and (5) failing to attend individual and group counseling sessions. The trial court held a hearing on September 5, 2008, and Davila pleaded "true" to all of the allegations in the second motion to revoke.

The State then presented evidence on punishment. Olga Hernandez testified that she is Davila's probation officer. She testified that Davila had nine convictions for "assault family violence." She recommended that the court revoke Davila's community supervision, and if not, place him in SAPF again. On cross-examination, the following exchange occurred:

| Defense counsel: | And the victim—the alleged victim in this case was Genoviva? |
|---|---|
| The Court: | Not the alleged victim, the victim because he's been convicted. |
| Defense counsel: | Okay, we'll get there here in a second, Your Honor. Is that his wife? |
| Hernandez: | Yes, sir. |
| Defense counsel: | Okay. Were there any pictures in that case? |
| Hernandez: | Not in my file. |
| Defense counsel: | Not in your file. You—did you—did you know that the victim did not want to prosecute in this case? |

3

| | |
|---|---|
| Hernandez: | No, I did not. |
| Defense counsel: | Okay. |
| The Court: | But that's irrelevant, really, because he's been convicted. He's been convicted a bunch of times of assaulting that victim. |
| Defense counsel: | Well, Your Honor— |
| The Court: | I mean, look, he may—he may disagree with that but it doesn't matter to me because he's been found guilty. |

Davila then testified. On direct examination, Davila stated that he is very sick with cirrhosis of the liver, hepatitis C, tuberculosis, and "lack of [potassium]." He explained that he was getting weaker by the day and that the doctor told him he had only two more years to live. He further testified that he has an enlarged heart and bleeding ulcers. On cross-examination, the State asked whether Davila brought any of his medical records supporting his medical history, and Davila said no. The State referred to probation records indicating that Davila submitted a medical worksheet to his probation officer on February 1, 2009 stating that he was "pain free." Davila denied that the medical worksheet was correct. Davila then testified that Genoviva had lied to the police when she reported the original assault in 2006.

After Davila finished testifying, Genoviva raised her hand and was recognized by the court. Genoviva was sworn, and before a question could be asked of her, she testified that she saw her father die from liver cirrhosis, and therefore, she would "make up lies just to get [Davila] locked up because [she] would see him drinking." In a discussion with the trial court, Genoviva denied that Davila was violent and claimed he was a good provider. She admitted that on the night that she claimed that Davila assaulted her in 2006, she was not

4

at home and that she told her twelve-year-old daughter to lie to the police to corroborate her story. Neither Davila's defense counsel nor the State asked any questions. The trial court then stated on the record:

> I mean, look, this is your stuff. I mean, I didn't get you here. You know, I didn't put you here. You put yourself here. It's not your attorney's fault, it's not the State's fault, it's not any of the other people's fault, it's not your family's fault, and I don't believe the fact that your wife said she was lying about it. I just don't believe her.
>
> I think that you are not a bad guy when you get up in the morning and you go to work and when you're not drinking, but I think the minute you hit that bottle you turn into a bad person, and the fact that you're shaking your head makes me believe you haven't heard a thing so I hereby revoke your community supervision probation, sentence you to five years TDC.

On September 5, 2008, the trial court signed an order revoking Davila's community supervision and imposing the original sentence. The trial court certified Davila's right to appeal on September 16, 2008.

On September 29, 2008, Davila filed a motion for new trial and a motion in arrest of judgment. In the motion, Davila alleged that there was "[e]vidence of medical records stating that [Davila] is ill and his health is critical due to contagious diseases[,] and this evidence was not introduced at [Davila's] trial for consideration by this Honorable Court." Davila submitted an affidavit by Cathy Clark, Davila's attorney, which stated that evidence existed supporting his medical claims and the evidence was not introduced into evidence. The affidavit, however, did not explain why the evidence was not submitted at the revocation hearing. On October 7, 2008, Davila submitted medical records and an affidavit from Irene Martinez, the custodian of records for Christus Spohn Hospital Memorial, in support of the motion for new trial. These records refer to treatments and hospitalizations in 2002, 2003, and 2004.

On October 30, 2008, the trial court held a hearing on the motion for new trial. At the hearing on the motion for new trial, Davila's counsel informed the court that because Genoviva recanted her statements about Davila's assault, she was prosecuted for making false statements to the police and to the district attorney. However, no evidence regarding the arrest was tendered or admitted at the hearing. Davila testified about his medical conditions, and the trial court denied the motion for new trial. This appeal ensued.

## II. Perjured Evidence

By his first issue, Davila argues that his due process rights under the United States Constitution were violated because his conviction for repeat family violence assault was based on Genoviva's allegations, which she recanted. *See* U.S. CONST. amend. XIV. He argues that a conviction based on perjured testimony cannot stand. *See Ex parte Carmona*, 185 S.W.3d 492, 496 (Tex. Crim. App. 2006). The State argues that we lack jurisdiction to consider this argument because Davila is not entitled to challenge the original adjudication of guilt on appeal from a revocation of community supervision. We agree with the State.

Article 44.12, section 23(b) of the Texas Code of Criminal Procedure provides a criminal defendant's appellate remedies after the revocation of community supervision:

> The right of the defendant to appeal for a review of the conviction and punishment, as provided by law, shall be accorded the defendant at the time he is placed on community supervision. When he is notified that his community supervision is revoked for violation of the conditions of community supervision and he is called on to serve a sentence in a jail or in the Texas Department of Criminal Justice, he may appeal the revocation.

TEX. CODE CRIM. PROC. ANN. art. 44.12 § 23(b). Davila was convicted of repeat family violence assault upon his guilty plea and sentenced to five years' imprisonment in 2006.

6

That sentence was probated by the trial court, and Davila was placed on community supervision, also in 2006. Any appeal of the conviction and punishment should have occurred in 2006 at the time Davila was placed on community supervision. *See id.*; *Jordan v. State*, 54 S.W.3d 783, 786 (Tex. Crim. App. 2001). The revocation of Davila's community supervision did not result from Genoviva's perjured testimony regarding the assault, but from Davila's pleas of "true" to the alleged violations of the conditions of his community supervision. Davila's remedy, if any, for the original adjudication of guilt for repeat family violence assault is by way of a writ of habeas corpus.[2] *See Carmona*, 185 S.W.3d at 496-97; *Jordan*, 54 S.W.3d at 787. Accordingly, we overrule Davila's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Davila argues that he received ineffective assistance of counsel during the revocation based on several alleged failures by his trial counsel. We disagree.

We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.); *see Strickland v. Washington*, 466 U.S. 668, 684 (1984). An appellant claiming a *Strickland* violation must establish that (1) "his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different." *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

_____

[2] We express no opinion on the potential success of a petition for writ of habeas corpus.

7

We afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Jaynes*, 216 S.W.3d at 851. The appellant must prove both elements of the *Strickland* test by a preponderance of the evidence. *Munoz v. State*, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.). Allegations of ineffectiveness must be firmly founded in the record. *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). The record on direct appeal will generally be insufficient to show that counsel's representation was so deficient as to meet the first prong of the *Strickland* analysis. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). An appropriate record, which should include counsel's reasons for his actions, is usually prepared at a hearing on a motion for new trial or developed by a writ of habeas corpus. *Batiste,* 217 S.W.3d 74, 83 (Tex. App.–Houston [1st Dist.] 2006, no pet.). "'[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'" *Goodspeed*, 187 S.W.3d at 392 (quoting *Rylander*, 101 S.W.3d at 111). Absent an opportunity for the attorney to explain his actions, an appellate court should not "find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

First, Davila argues that although his attorney called Genoviva as a witness, he failed to examine her to establish her credibility.[3] Davila argues that Genoviva's false allegations and credibility affected his ability to receive a fair trial "because her accusations

---

[3] Davila also states that his counsel was ineffective for failing to "advise him accordingly before his plea and before trial." It is unclear from the brief what advice Davila was seeking or when. We hold that this argument is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

coupled with previous court proceedings available to the Court tainted the Court's view of [Davila] causing the Court to revoke [Davila's] community supervision, sentencing him to five (5) years incarceration." Davila further argues that his attorney failed to request a continuance of the hearing to investigate Genoviva's lies, and this was not mere trial strategy.

Davila has not made a proper showing that his counsel was ineffective by failing to cross-examine Genoviva and by failing to request a continuance to further investigate her testimony. The trial court expressly stated on the record that it did not believe that Genoviva's testimony was relevant because Davila had already been convicted of the assault, and that issue was not before the court. We believe that it was plausible trial strategy for Davila's counsel not to cross-examine Genoviva, given that she had already testified that she lied about the allegation of assault and that the trial court had already determined her testimony was irrelevant. We also disagree that the record shows that Davila's counsel was ineffective by failing to request a continuance to investigate Genoviva's testimony. Davila's counsel knew about the perjury at the time of the revocation hearing because he alluded to it during his cross-examination of Hernandez and was prepared to call Genoviva as a witness. Although Davila filed a motion for new trial, neither that motion nor any of the affidavits attached thereto discuss the trial strategy of Davila's counsel. On this record, we cannot say that Davila has rebutted the strong presumption of effective counsel. *Id.*

Next, Davila argues that his defense counsel failed to introduce medical history evidence at the revocation hearing, which would have shown that Davila should have been

placed in a medical facility or an out-patient treatment center. The State points out that the medical records that were submitted in support of Davila's motion for new trial are records from hospitalizations or treatments in 2000, 2002, 2003, and 2004. The evidence presented did not show Davila's current physical condition. Nevertheless, at the revocation hearing, Davila himself testified to his medical history during questioning by his attorney. The motion for new trial did not provide any explanation for counsel's failure to introduce the medical records, and on this record, we cannot say that Davila has rebutted the strong presumption of effective counsel. *Id.* Accordingly, we overrule his second issue.

## IV. WITHHOLDING EXCULPATORY EVIDENCE

By his third issue, Davila argues that at the time of the revocation hearing, the State "was aware or should have been aware that [Genoviva] had an outstanding warrant for her arrest for False Reporting to a Police Officer for making a previous false complaint against [Davila]," and the prosecutor failed to disclose this knowledge to Davila's counsel or to the trial court. Davila argues that on September 15, 2008, ten days after the hearing on the motion to revoke, Genoviva pleaded guilty to the charges and was sentenced to twenty days in jail and assessed court costs. Davila attached a printout to his brief as "Exhibit A," which purports to be a document printed from the Nueces County District Clerk's Criminal Case search website. This document shows that a person named "Genoveva Hernandez" was arrested on September 15, 2008, after the hearing on the motion to revoke, for making a false report to law enforcement. We do not consider evidence attached to briefs that was not part of the record in the trial court. *See Ramirez v. State*, 104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003); *Hartman v. State*, 198 S.W.3d 829, 842 (Tex. App.–Corpus Christi

10

2006, pet. struck).  Because Davila has not supported his argument with references to the trial court record, we hold this issue is inadequately briefed.  *See* TEX. R. APP. P. 38.1(i). Accordingly, we overrule his third issue.

## V.  DISPROPORTIONATE PUNISHMENT

By his fourth issue, Davila argues that the sentence he received is disproportionate to the severity of the crime in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  *See* U.S. CONST. amend. VIII.  The State argues that Davila waived this complaint by failing to object on this ground in the trial court.  We agree.  Davila made no objection to his sentence in the trial court at the time of sentencing or in any post-trial motion.  Accordingly, he has failed to preserve this issue for our review, and we overrule his fourth issue.  *See Schneider v. State*, 645 S.W.2d 463, 466 (Tex. Crim. App. 1983); *Trevino v. State*, 174 S.W.3d 925, 927-29 (Tex. App.–Corpus Christi 2005, pet. ref'd); *see also Figueroa v. State*, No. 13-08-00115-CV, 2009 WL 3489842, at *1 (Tex. App.–Corpus Christi Oct. 29, 2009, pet. ref'd) (mem. op., not designated for publication).

## VI.  CONCLUSION

Having overruled all of Davila's issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
See TEX. R. APP. P. 47.2(b)

Delivered and filed the
8th day of July, 2010.

11