

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-17-00054-CR**
**NO. 02-17-00055-CR**

TERRELL DEVONTE ROBINSON                                              APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1439989D, 1451613D

----------

## MEMORANDUM OPINION[1]

----------

Terrell Devonte Robinson appeals the revocation of his deferred adjudication supervision and convictions for two different offenses: (1) possession of a controlled substance of more than one but less than four grams enhanced with a habitual offender notice and (2) burglary enhanced with a habitual offender notice. *See* Tex. Health & Safety Code Ann. § 481.115(c)

---

[1]*See* Tex. R. App. P. 47.4.

(West 2017); Tex. Penal Code Ann. § 12.42(d) (West Supp. 2017). Robinson contends that both convictions are invalid because—before he entered his original guilty plea resulting in deferred adjudication for both offenses—the State misinformed him in court filings about the correct punishment range he was facing. Thus, Robinson argues that he did not enter the original guilty pleas intelligently in violation of his Due Process right. U.S. Const. amend. IV; *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013). We dismiss the appeals.

**Background**

In March 2016, a grand jury indicted Robinson for possession of a controlled substance; while that case was pending, in June 2016, a grand jury indicted Robinson for burglary. Both indictments contain a habitual offender notice. Robinson, his counsel, and counsel for the State signed initial plea offer acknowledgements in both cases. Each offer states that the range of punishment is "not more than 99 years['] or less than 25 years[']" confinement. But later memorializations of plea offers list different minimum punishments. On May 31, 2016, Robinson, his counsel, and the State's counsel signed a plea offer in the drug possession case that lists the minimum punishment as five years' confinement. A July 2016 status conference report in the drug possession case lists a potential minimum punishment of five years' confinement; the July 2016 status conference report in the burglary case lists a potential minimum punishment of fifteen years' confinement.

2

On September 26, 2016, Robinson pleaded guilty to both offenses without a punishment recommendation from the State. Robinson, his counsel, counsel for the State, and the trial judge signed written plea admonishments that day, which list twenty-five years as the minimum term of confinement for each offense. At the plea hearing, the trial court questioned Robinson about his understanding of the range of punishment for each charge:

THE COURT: They're also saying in that indictment you have a second prior felony conviction. So if you're found guilty and they prove both of them, then your punishment becomes 25 years in the penitentiary at a minimum, all the way up to 99 years or life.

[ROBINSON]: Yes, sir.

THE COURT: Do you understand what effect the second prior conviction can have upon your range of punishment?

[ROBINSON]: Yes, sir.

THE COURT: Then on the second case, that's a burglary of a habitation case.

. . . .

THE COURT: With the second prior conviction it becomes 25 minimum. Do you understand that?

[ROBINSON]: Yes, sir.

THE COURT: All the way up to life.

[ROBINSON]: Yes, sir.

The trial court asked the parties about the status of plea negotiations. The State told the judge that it had offered a plea bargain of twenty years'

3

confinement, but Robinson's counsel told the trial court that Robinson wished to participate in a drug rehabilitation program, which required him to enter an open plea of guilty. Not only did Robinson's counsel ask him whether he understood that the minimum punishment for each offense would be twenty-five years' confinement, the trial judge also clearly explained the consequences to Robinson:

> THE COURT: Okay. Here's the problem. First of all, in order to get into the DIRECT program the State, first of all, would have to be willing to waive a jury in these cases. If they do not waive a jury, then you can't get into DIRECT. Okay?
>
> Second of all, it is a -- it would be an open plea to me and I could say, no, I'm not going to follow that DIRECT. Okay. I'm not going to do that. I'm going to send you to 40 years in the penitentiary. But if you do an open plea, if the State is willing to do that, it would also involve you having to plead true to the enhancement paragraphs, which means *if I did defer entering a finding of guilt and placed you on probation and you messed up on the probation, if you didn't finish the DIRECT program, I could send you anywhere -- to the penitentiary anywhere within that 25- to 99-year punishment range.* Do you understand that?
>
> [ROBINSON]: Yes.

[Emphasis added.]

As a result of Robinson's open guilty pleas, the trial court placed him on five years' deferred adjudication community supervision for each offense. The trial court ordered Robinson to successfully complete an intensive outpatient program as one of his conditions of community supervision. Robinson did not appeal the trial court's orders.

4

The trial judge supervising the drug rehabilitation program discharged Robinson unsuccessfully in January 2017, and the State filed a petition to adjudicate for each offense. Robinson, his counsel, counsel for the State, and the trial judge again signed written plea admonishments in each case, which state that if the trial judge granted the petitions to adjudicate, the range of punishment for each offense would be "25 – life."

At a hearing on the petitions, Robinson pleaded true to all of the allegations in the State's petitions. But although he acknowledged that when he was first placed on deferred adjudication community supervision he knew what "habitual" meant and that he had pleaded true to the habitual offender enhancement paragraph in each case, he testified that he did not "know that [he] would have to come back and face 25 years." When his counsel asked him, "[D]id you think the probation would expose you to the same punishment range if you were to screw it up?" Robinson answered he did not know that. During closing, Robinson's counsel asked the trial judge to withdraw the prior pleas of true to the habitual offender paragraphs:

> I don't think he was properly advised about the consequences of pleading true at the time of the plea and, therefore, may have been in some way robbed of his Sixth Amendment right to effective counsel. So if you are going to send him to the penitentiary, I'd ask that you find at least one of the paragraphs not true and adjudicate him of the lesser.

The trial court declined to do so and sentenced Robinson to twenty-five years' confinement in each case.

5

## Disposition

Robinson's two issues challenge the validity of the original orders of deferred adjudication. Unless an order placing a defendant on deferred adjudication community supervision is void, that defendant may not raise issues related to the original plea proceeding—including voluntariness-related issues—in an appeal from a subsequent adjudication proceeding. *See Nix v. State*, 65 S.W.3d 664, 667–69 (Tex. Crim. App. 2001) ("[A] judgment is void only in very rare situations—usually due to a lack of jurisdiction."); *Jordan v. State*, 54 S.W.3d 783, 785 (Tex. Crim. App. 2001); *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999). We therefore must dismiss Robinson's only two issues and his appeals. *See* Tex. R. App. P. 43.2(f); *Manuel*, 994 S.W.2d at 660, 662.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  SUDDERTH, C.J.; PITTMAN and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 1, 2018

6