In The Texas Court Of Criminal Appeals     63,775-21

Re: Art.11.07's 60CR1217-83-3, 60CR1217-83-4, 60CR1217-83-7 (01-11-00822CR)

~~To: Chief Justice, Sharon Keller and Entire (Enbanc Court) and Staff Attorney's~~

The Court Has <u>HELD</u>, That In (2010) ERVIN v. STATE, 331 SW3d (Tex. Crim. App. 2010), A Texas Court Of Appeals[FN1] (1st Dist.) Is <u>Duty Bound</u> Under The Texas Constitution To <u>Exercise</u> The Full Extent Of It's Appellate Powers On The Questions (ISSUE #3, 01-11-00822CR GPD#2010-13986 CHARGING INSTRUMENT, 'ARRESTING INSTRUMENT AND Id INSTRUMENT WAS THE ONLY TESTIMONY PRESENTED TO THE GRAND JURY ON 7-14-10 VIA VODO GPD#2010-13986 FATALLY AND FUNDAMENTALLY DEFECTIVE CHARGING & ARREST IN-

FN.1 01-11-00822CR (ISSUE#3) PRO SE...

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 11 2015

Abel Acosta, Clerk

1

STRUMMENT ADMITTED BY JUDGE R.R. VOL. 5 of 9 P.176)
OF FACT BROUGHT BEFORE IT ON APPEAL.

ISSUE #3, THE CHARGING INSTRUMMENT USED
ON 4-21-22-2010, TO CHARGE/ARREST AND
TO INDICT ME, Id. R.R. VOL. 5 of 9 P.176, FAILED
TO SATISFY THE CONSTITUTIONAL REQUESITES
OF A CHARGING INSTRUMMENT.

10CR1217 CONVICTION IS VOID, SEE THIS
COURT'S OWN PRESEDENT ATTACHED NIX V.
STATE, 65 SW3d 664, 668 (TEX. CRIM. APP.
2001.

I filed/ CITY EXPARTE COOPER, 589 SW2d
130, 131 (TEX. CRIM. APP. 1979) (EN BLANC)
IN ALL MY PLEADING'S AND APPEAL AND MY
ART'S 11.07'S #'S 10CR1217-83-3; 10CR1217-83-4
10CR1217-83-7 TO BE ENTITLED TO RELIEF AS
Id. ENBLANC COURT HELD.

MY ART. 11.07'S ADDRESSING THIS/ OTHER
ISSUE'S WAS COGNIZABLE, THE COMPLETE
OMISSION OF ART. 1.23, 45, 019 (2)(2)(4)(1)
FROM THE GPD CHARGING INSTRUMMENT
#. 2010-13986 WAS COGNIZABLE AND
MY WRIT (S) SUPRA SHOULD HAVE

2

BEEN GRANTED YEARS AGO IN LOCKR-17-83-2 WRT.

AND IN 01-11-00822CR APPEAL ON ISSUE #3.

E. KEYE (SEE, BIAS JUDGE T.R. A.P. GROUND IN LOCKR 17-83-3, WHERE E. KEYES ILLEGALLY SAT ON 2 EN BANC PANELS AND VOTED TO DENY THE RECUSAL MOTIONS ON HER AND THEN SIGNED THESE JUDGMENTS) AND PANEL ON 7-30-2013 (PRIOR) KNEW THAT I NEVER ARGUED OR BRIEFED THE ISSUE THAT G-19 (1-4-2011) # 2010-13980 SEARCH AFFIDAVIT DID NOT SATISFY ART. 1.23, '45, 019 (A) (2) (4) (7).

THE (SPECIAL PROS.) STATE'S ATTY. ALLEN C. ISBELL FN2 AND PROSE, APPELLANT IN OUR BRIEF'S TO THE COURT DOES OR DID WE EVEN STATE OR MENTIONED NOTHING ABOUT A SEARCH WARRANT COMPLAINT, # 2010-13980, (JAN. 4. 2011) IT CLEARLY STATE'S THE ARREST / CHARGING INSTRUMENT DID NOT COMPLY WITH ART'S 1.23 (45. 019 (A) (4) (7)), THE COURT

FN 2. ST. V. ZORKINA, 404 SW3d 734, 737 N2 (TEX. APP SAN ANTONIO 2013), REYES V. ST (ATTY Id. ISBELL)

3

OF APPEALS, DISCRIMINATED AGAINST THE PRO SE APPELLANT, BY MAKING A ERRONEOUS RULING AND ISSUING A VOID JUDGMENT TO ASSIST (ALLEN C. ESSEN OF HOUSTON AND GALVESTON, COUNTY NEWLY (2011) ELECTED D.A. FROM HOUSTON JACK ROADY) THE STATE/AGENTS TO ILLEGALLY AND UNLAWFULLY RESTRAIN ME OF MY liberty AND THE COURT AR- BITRARLY VIOLATED MY ACCESS TO COURTS RIGHT" BY DT' ACTS OF OMISSIONS/COMM- ISSIONS AND EVEN OVER-RULED BY MOTIONS AND REPLY BRIEF POINTING OUT DT' ACTS.

THIS COURT, STAFF ATTY's, CLERKS HAS NOT BEEN DUTY BOUND (ERVIN, SUPRA) AND UP- HOLD DT' OWN PRECEDENTS EXPARTE COOP- ER, NIX, 664, 668, EXPARTE MOSS 446 SW3d 786 (TEX. CRIM. APP. 2014) (AMI CT. APPROVAL) CITING NIX, 664, 668 IN MY ART. 11.07's SUPRA. I MET ART. 11.07 STANDARD FOR RELIEF.

[signature]

C/C 3.

4

6-4-2015

RE: 01-11-00888-CR (ISSUE #3)
RE: 10-CR-1217-83-3
RE: 10-CR-1217-83-4 } (ALL RELATED GROUNDS TO UNVOIDED-
RE: 10-CR-1217-83-7    PASSED  ISSUE #3

REGINALD KEITH NIX, Appellant v. THE STATE OF TEXAS

COURT OF CRIMINAL APPEALS OF TEXAS

65 S.W.3d 664; 2001 Tex. Crim. App. LEXIS 52

NO. 793-00

June 27, 2001, Delivered

**Editorial Information: Prior History**

ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS, HARRIS COUNTY.

**Disposition:**

Affirmed.

**Counsel**

Reginald Keith Nix, Pro Se.

Bridget R. Anderson, Assist. DA, Houston.

**Judges:** Keller, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined. WOMACK, J., filed a concurring opinion. JOHNSON, J., filed a dissenting opinion in which MEYERS, PRICE, and HOLLAND, JJ., joined.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant pled no contest to misdemeanor theft and was placed on deferred adjudication community supervision by the Fourteenth Court of Appeals, Harris County (Texas). He subsequently violated the conditions of his community supervision, his guilt was adjudicated, and he was sentenced to jail. He appealed the sentence. Defendant failed to allege error that could render his original conviction void. The appellate court was without a transcription of the plea proceedings and could not determine the truth of defendant's claims without one.

**OVERVIEW:** Appealing his sentence, defendant complained his original plea had been taken in violation of his right to counsel and his right to a jury trial. The claims were not raised before the trial court at the revocation hearing, nor in defendant's motion for new trial. Defendant failed to allege an error that could render the original judgment of conviction void. All three of his claims turned on the theory that he was denied counsel or that a waiver of counsel was involuntary. The appellate court could not ascertain the truth of defendant's claims on the record without a transcription of the plea proceedings. Although the plea papers showed defendant represented himself pro se, a transcript of the plea hearing might have shown that defendant voluntarily waived counsel and was informed by the trial court of the dangers of self-representation. Defendant could not use the void judgment exception to gain relief.

**OUTCOME:** The judgment was affirmed.

**LexisNexis Headnotes**

Criminal Law & Procedure > Appeals > Standards of Review > General Overview
Criminal Law & Procedure > Sentencing > Alternatives > Probation > Revocation > General Overview

A defendant can raise on appeal from a revocation proceeding an error in the original plea hearing if the error would render the original judgment void. In accordance with that reasoning, the void judgment exception also applies in the deferred adjudication context.

Criminal Law & Procedure > Appeals > Standards of Review > General Overview
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Assistance of Counsel
Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Abuse of Public Office > Illegal Political Activity > Penalties
Criminal Law & Procedure > Jurisdiction > Accusatory Instruments > Indictments
Criminal Law & Procedure > Jurisdiction & Venue > General Overview
Criminal Law & Procedure > Jurisdiction & Venue > Jurisdiction
Criminal Law & Procedure > Trials > Entry of Judgments
Public Health & Welfare Law > Social Services > Legal Aid

A judgment of conviction for a crime is void when (1) the document purporting to be a charging instrument, i.e. indictment, information, or complaint, does not satisfy the constitutional requisites of a charging instrument, thus the trial court has no jurisdiction over the defendant, (2) the trial court lacks subject matter jurisdiction over the offense charged, such as when a misdemeanor involving official misconduct is tried in a county court at law, (3) the record reflects that there is no evidence to support the conviction, or (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived. This list is very nearly an exclusive list.

Criminal Law & Procedure > Postconviction Proceedings > Motions to Vacate Judgment
Governments > Courts > Court Personnel

For a judgment to be void, the record must leave no question about the existence of the fundamental defect. If the record is incomplete, and the missing portion could conceivably show that the defect does not in fact exist, then the judgment is not void, even though the available portions of the record tend to support the existence of the defect.

Criminal Law & Procedure > Postconviction Proceedings > Motions to Vacate Judgment

A judgment voiding defect should be one that can be ascertained from the record with little difficulty.

Criminal Law & Procedure > Sentencing > Alternatives > Probation > General Overview

To invoke the habeas corpus exception on appeal, the defendant must show: (a) that the claim is cognizable on a writ of habeas corpus, and (b) that the defendant attempted to litigate the claim at the revocation proceeding.

Criminal Law & Procedure > Habeas Corpus > Retroactivity of Decisions > General Overview

The threshold question for any retroactivity analysis is whether the rule articulated is in fact a "new" rule. The standards for determining whether a rule is "new" vary, depending upon whether the rule is a purely

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

C/C, JOHN WHITMIRE, McCLENDON  (M.B.417)
RODNEY ELLIS
DAVID DOW (WITH PACKAGE)
DIANANA LOUKES
TANISHA, ETAL  WITH GROUP 2010-1398q COMPLAINT

court-made rule or an interpretation of a statute.

For an interpretation of a statute to be considered a new rule, that interpretation must have been preceded by an inconsistent interpretation of a statute to be considered a new rule, that interpretation viewed by the Court of Criminal Appeals of Texas as authoritative. To be viewed as authoritative, the inconsistent interpretation must be either (1) a rule articulated in prior precedent from the Court of Criminal Appeals of Texas, (2) a practice arguably sanctioned in prior cases from the Court of Criminal Appeals of Texas, or (3) a longstanding practice that lower courts had uniformly approved.

**Opinion**

**Opinion by:** KELLER

**Opinion**

{65 S.W.3d 666} Appellant pled no contest to misdemeanor theft and was placed on deferred adjudication community supervision. No court reporter's record was made of that proceeding, 1 and no appeal was taken from the trial court's decision within the time limits prescribed by law. Appellant subsequently violated the conditions of his community supervision, his guilt was adjudicated, and he was sentenced to one year in jail.

On appeal of his sentence, appellant complained that his original plea had been taken in violation of his right to counsel and his right to a jury trial in the following respects:(1) that the trial court did not inquire into whether he had knowingly and intelligently waived his right to counsel, (2) that the trial court violated the Code of Criminal Procedure and the state and federal constitutions by not advising him of the dangers of self-representation, and (3) that his waiver of a jury trial was invalid where the trial court initially did not appoint an attorney and where {65 S.W.3d 667} Appellant had not effectively waived counsel. 2

These claims were not raised before the trial court at the revocation hearing, nor were they made in appellant's motion for new trial. Citing our decision in *Manuel v. State*, 3 the Court of Appeals dismissed the appeal for want of jurisdiction.

On discretionary review, appellant advances two contentions: (1) that his claims on appeal fall within a "fundamental error" exception to the holding in *Manuel*, and (2) that *Manuel's* holding should not be applied retroactively. We will affirm.

**A. Exceptions to Manuel**

In *Manuel*, we stated that "a defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding, such as evidentiary sufficiency, only in appeals taken when deferred adjudication community supervision is first imposed." 4 In arriving at that conclusion, we relied upon caselaw involving "regular" community supervision. 5 This caselaw was relevant because we determined that "the legislative intent in enacting Article 44.01(j) was to permit defendants to appeal from deferred adjudication community supervision *to the same extent (i.e. with the same rights and restrictions)* as defendants are permitted to appeal from 'regular' community

supervision." 6

Appellant contends that caselaw relating to regular community supervision recognizes exceptions to the general rule that the original plea cannot be attacked on an appeal of the revocation proceedings. Because *Manuel* is based upon this caselaw, appellant concludes that these exceptions must carry over to the deferred adjudication context. This particular contention is well taken. Two of the regular community supervision cases cited by *Manuel* to support its holding - *Whetstone* and *Traylor* - explicitly recognized that there were exceptions to the general rule. 7 To the extent that "regular" probation cases recognized exceptions, these exceptions would logically carry over to the deferred adjudication context. 8 But appellant can derive no comfort from our agreement with him on this point because his claims on appeal do not fall within the recognized exceptions.

Our cases recognize two exceptions to the general rule, which exceptions we shall call (1) the "void judgment" exception, and (2) the "habeas corpus" exception. In the void judgment exception, we recognize that there are some rare situations in which a trial court's judgment is accorded no respect due to a complete lack of power to render the judgment in question. A {65 S.W.3d 668} void judgment is a "nullity" and can be attacked at any time. 9 If the original judgment imposing probation was void, then the trial court would have no authority to revoke probation, since, with no judgment imposing probation (because it is a nullity), there is nothing to revoke. In past cases involving regular probation, we have recognized that a defendant can raise on appeal from a revocation proceeding an error in the original plea hearing if the error would render the original judgment void. 10 In accordance with the reasoning of these precedents, we hold that the void judgment exception also applies in the deferred adjudication context.

But a judgment is void only in very rare situations - usually due to a lack of jurisdiction. In civil cases, a judgment is void only when there was "no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter a particular judgment, or no capacity to act as a court." 11 This rule is essentially paralleled in criminal cases. A judgment of conviction for a crime is void when (1) the document purporting to be a charging instrument (i.e. indictment, information, or complaint) does not satisfy the constitutional requisites of a charging instrument, 12 thus the trial court has no jurisdiction over the defendant, (2) the trial court lacks subject matter jurisdiction over the offense charged, such as when a misdemeanor involving official misconduct is tried in a county court at law, 13 (3) the record reflects that there is no evidence to support the conviction, 14 or (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived, in violation of *Gideon v. Wainwright*, 15 While we hesitate to call this an exclusive list, it is very nearly so.

Moreover, for a judgment to be void, the record must leave no question about the existence of the fundamental defect. If the record is incomplete, and the missing portion could conceivably show that the defect does not in fact exist, then {65 S.W.3d 669} the judgment is not void, even though the available portions of the record tend to support the existence of the defect. For example, when a defendant levels a "no evidence" challenge against the conviction, but the record contains no court reporter's transcription of the original plea hearing, then the conviction is not void, even though the record - as far as it goes - tends to support the no evidence claim. 16 "Without the transcription, we are unable to ascertain whether other evidence was introduced to support the appellant's conviction." 17 In recognizing *Gideon* error as "quasi-jurisdictional," the Supreme Court emphasized that a voiding defect should be one that can be ascertained from the record with little difficulty. 18 In holding that ineffective assistance of counsel claims and involuntary plea claims do not, if meritorious, make a conviction void, the Supreme Court articulated several concerns, one of which was that such claims would require courts "to rummage through frequently nonexistent or difficult-to-obtain state court transcripts." 19

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Appellant has failed to allege an error that could render the original judgment of conviction void. All three of his claims turn on the theory that he was denied counsel or that a waiver of counsel was involuntary. 20 But we cannot ascertain the truth of appellant's claims on this record without a transcription of the plea proceedings. Although the plea papers show appellant representing himself *pro se*, a transcript of the plea hearing might have shown that appellant voluntarily waived counsel and was informed by the trial court of the dangers of self-representation. 21 Appellant cannot use the void judgment exception to gain relief.

The habeas corpus exception essentially involves the litigation of a writ of habeas corpus at the probation revocation proceedings. Because probation is not considered to be a "final" conviction, an application for writ of habeas corpus filed during the pendency of revocation proceedings would be returnable to the trial court, whose ruling would be reviewable by a court of appeals and, ultimately, subject to a petition for discretionary review from this Court. 22 Had the application been filed separately, then, the same trial court would be responsible for resolving both the habeas application and the revocation proceedings, and these two proceedings would follow the same appellate path...We have held that, in the interest of judicial economy, {65 S.W.3d 670} the probationer need not file a separate writ application but may mount his attack during the revocation hearing. 23 To invoke the habeas corpus exception on appeal, the defendant must show: (a) that the claim is cognizable on a writ of habeas corpus and (b) that the defendant attempted to litigate the claim at the revocation proceeding. 24

Today in *Jordan*, we overrule *Warren* and *Carter* to the extent those cases held that habeas corpus claims could be raised at a revocation hearing without actually filing a writ of habeas corpus application. 25 However, even under the old rule, appellant's claims would fail because those claims were not brought to the trial court's attention at the revocation proceeding. 26

**B. Retroactivity** The threshold question for any retroactivity analysis is whether the rule articulated is in fact a "new" rule. 27 The standards for determining whether a rule is "new" vary, depending upon whether the rule is a purely court-made rule or an interpretation of a statute. 28 So, we must determine whether the rule in *Manuel* derives its authority from our inherent judicial power or from statutory authority. We find that the rule is derived from statute. In *Dilleney v. State*, we found that certain amendments to Article 44.01 - that became effective in 1987 - gave defendants who were placed on deferred adjudication the same right to appeal that existed for defendants given regular probation. 29 As we have remarked earlier in this opinion, *Manuel* observed that the Legislature intended to permit deferred adjudication defendants to appeal to the same extent - with the same rights and restrictions - as defendants given regular probation. We concluded: "Certainly it was not the Legislature's intent, in enacting Article 44.01(j), to permit *two* reviews of the legality of a deferred adjudication order, one at the time deferred {65 S.W.3d 671} adjudication community supervision is first imposed, and another when, and if, it is later revoked." 30 We made clear in *Manuel* that the rule announced therein was an interpretation of the Legislature's amendment to Article 44.01 based upon the discernable legislative intent.

Having found that the rule articulated in *Manuel* was a statutory interpretation, we turn to the standards for determining when a statutory interpretation constitutes a new rule. For an interpretation of a statute to be considered a new rule, that interpretation must have been preceded by an inconsistent interpretation viewed by this Court as authoritative. 31 To be viewed as authoritative, the inconsistent interpretation must be either (1) a rule articulated in prior precedent from this Court, or (2) a practice arguably sanctioned in prior cases from this Court, or (3) a longstanding practice that lower courts had uniformly approved. 32

Under the guidelines set forth, no prior inconsistent, authoritative interpretation ever existed. This

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Court has never issued an interpretation of the amendments to Article 44.01(j) that conflicts with *Manuel*. In *Dilleney*, we discussed the *possibility* that our interpretation of the statute might give the defendant a right to two appeals of the plea proceedings, but we expressly held that such a question was not before us. Finally we note the application of our holding to Art. 42.12 § 5(b)'s provision that after adjudication of guilt a defendant's appeal continues as if the adjudication of guilt had not been deferred. A defendant who has appealed, say, a motion to suppress after the received deferred adjudication, who seeks to appeal that same matter again after he is adjudicated guilty, *may* under the plain wording of the article be authorized to do so. *That question is not before us in this case.* 33

Since *Dilleney* but before *Manuel*, we have decided several cases involving attacks on the original plea in an appeal after adjudication, but none of these cases addressed the propriety of raising original plea issues in a post-adjudication appeal. 34

{65 S.W.3d 672} If we had never recognized the issue in *Dilleney*, we might be inclined to hold that we arguably sanctioned the practice of attacking the original plea in a post-adjudication appeal when we decided cases involving such attacks on the merits instead of issuing orders to dismiss the appeals. But, having highlighted the issue as an open question, we cannot accept the claim that our failure to address the issue in other cases constitutes a tacit approval of a rule contrary to that set forth in *Manuel*. Practitioners should know that we may decline to address an issue in a case for any number of reasons, including the failure to raise or adequately brief the issue in question. Moreover, in 1996 we recognized that the provision for a pre-adjudication appeal in Article 44.01(j) could have adverse effects on a post-adjudication appeal. 35

Further, prior to *Manuel*, there existed no longstanding practice that had been uniformly approved by the lower courts. Only a few intermediate appellate cases clearly addressing the issue were decided between our decisions in *Dilleney* and *Manuel*. In 1992, the Dallas court held that original plea matters could be raised in a post-adjudication appeal. 36 but that court later came to the contrary conclusion. 37 Two other courts have held that original plea matters could be raised in a post-adjudication appeal 38 while three other courts have held that such matters cannot be raised at that stage. 39

Accordingly, we find that *Manuel* did not create a "new" rule, and we need not conduct a *Stovall* 40 balancing analysis. 41

The judgment of the Court of Appeals is affirmed.

KELLER, Presiding Judge

Date delivered: June 27, 2001

Concur

**Concur by:**

WOMACK

Concur

Today the Court holds that the appellant's point of appeal does not fall within the "void judgment" exception to the rule against appealing an error that occurred when probation was granted, in an appeal after probation is revoked. *See ante*, 2001 Tex. Crim. App. LEXIS 52, *5-6. I join the Court's opinion with the understanding that that holding does not foreclose consideration, in a proper case, of whether there should be a "void judgment" exception.

En banc.

Delivered June 27, 2001.

Dissent

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

lxcases

## Dissent by:
Johnson

Johnson, J., *joined by Meyers, Price and Holland, JJ., dissenting.*

In the instant case, appellant was placed on deferred adjudication and, following adjudication of his guilt, he brought challenges to his original plea, based on alleged violations to his right of counsel and right to a jury trial. Today, a majority of this court precludes him from bringing such claims. Because I believe that such claims may be brought, I respectfully dissent.

As I have noted elsewhere, our case law establishes that on appeal from an order revoking probation (i.e., "regular" community supervision), a defendant is permitted to bring a challenge to the original conviction when such a challenge was for "fundamental error." *Jordan v. State*, 54 S.W.3d 783, 2001 Tex. Crim. App. LEXIS 54, *14 (Tex. Crim. App. 2001) (Johnson, J., dissenting). Because we have equated deferred adjudication with "regular" community supervision for purposes of appeal, logic dictates that this same rule of fundamental error apply in the context of deferred adjudication. See *Manuel v. State*, 994 S.W.2d 658, 661-2 (Tex. Crim. App. 1999); *Jordan,*  S.W.3d at  , 2001 Tex. Crim. App. LEXIS 54, *2.

Today, however, the majority denies relief to appellant by overruling our "fundamental error"/"habeas corpus" case law. *Ante*, at 2001 Tex. Crim. App. LEXIS 52, *10; *Jordan,*  S.W.3d at  , 2001 Tex. Crim. App. LEXIS 54, *14. I have noted my dissent to this action. *Jordan,*  S.W.3d  , 2001 Tex. Crim. App. LEXIS 54, *14 (Johnson, J., dissenting).

The majority then goes on to declare that neither its decision today nor *Manuel* created a "new rule," so that a retroactivity analysis is unnecessary. *Ante*, at 2001 Tex. Crim. App. LEXIS 52, *14. I disagree. Despite the fact that we never explicitly held that the "fundamental error" rule applied in the context of deferred adjudication, the logic of *Manuel* so dictated since, as noted above, *Manuel's* holding was explicitly predicated on its equating "regular" community supervision with deferred adjudication for purposes of appeal.

Based on the foregoing, as well as my dissent in *Jordan*, I dissent. 1

The majority also states that "a judgment is void only in very rare situations--usually due to a lack of jurisdiction." *Ante*, at 2001 Tex. Crim. App. LEXIS 52, *6. This statement is questionable in light of the Court's recent decision in *Ex parte Seidel*, 39 S.W.3d 221 (Tex. Crim. App. 2001).

Johnson, J.

Date Delivered: June 27, 2001

Footnotes

1
The record contains a written waiver of the right to have a court reporter record the defendant's plea.

2
*Nix v. State*, No. 14-97-00377- CR, 1999 Tex. App. LEXIS 8649, *3 (Tex. App.-Houston [14th Dist.], November 18, 1999)(unpublished).

3
994 S.W.2d 658 (Tex. Crim. App. 1999).

4
*Id.* at 661-662.

5
*Id.* at 661.

6
*Id* (emphasis added).

7
*Whetstone v. State*, 786 S.W.2d 361, 363 (Tex. Crim. App. 1990); *Traylor v. State*, 561 S.W.2d 492, 494 (Tex. Crim. App. 1978). *See Manuel*, 994 S.W.2d at 661 (citing *Whetstone and Traylor*).

8
In *Daniels v. State*, 30 S.W.3d 407 (Tex. Crim. App. 2000), we stated that the reporter's record from the original deferred adjudication proceeding was not necessary to the appeal's resolution because "appellant cannot now appeal any issues relating to the original deferred adjudication proceeding." *Id.* at 409. However, in that case we did not confront a claim that a fundamental error exception - recognized in regular probation cases - was applicable.

9
*Ex Parte Patterson*, 969 S.W.2d 16, 19 (Tex. Crim. App. 1998).

10
*Corley v. State*, 782 S.W.2d 859, 860 n.2 (Tex. Crim. App. 1989); *Gonzales v. State*, 723 S.W.2d 746, 747 n.3 (Tex. Crim. App. 1987).

11
*Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).

12
See *Duron v. State*, 956 S.W.2d 547, 550-551 (Tex. Crim. App. 1997)(failure to allege an offense because the Court cannot ascertain which offense is alleged); *Cook v. State*, 902 S.W.2d 471, 479-480 (Tex. Crim. App. 1995)(failure to charge a "person"). Past cases that specifically involve probation revocations referred to "fundamentally defective" indictments as being subject to attack on appeal from a revocation proceeding. *Whetstone*, 786 S.W.2d at 363; *Traylor v. State*, 561 S.W.2d at 494. Except for certain circumstances outlined by *Duron* and *Cook*, "fundamental" indictment errors have been eliminated by constitutional and statutory amendment. *Studer v. State*, 799 S.W.2d 263, 271-272 (Tex. Crim. App. 1990).

13
*Gallagher v. State*, 690 S.W.2d 587, 588-589, 589 n.1, 594 (Tex. Crim. App. 1985)(district court has exclusive jurisdiction of misdemeanor offenses involving official misconduct).

14
See *Wolfe v. State*, 560 S.W.2d 686, 688 (Tex. Crim. App. 1978). For the judgment to be void, the record must show a complete lack of evidence to support the conviction, not merely insufficient evidence. *Id.* And a guilty plea constitutes some evidence for this purpose. *Ex Parte Williams*, 703 S.W.2d 674, 682 (Tex. Crim. App. 1986).

15
*Ex Parte Olvera*, 489 S.W.2d 586, 589 (Tex. Crim. App. 1973); *Ex Parte Felton*, 815 S.W.2d 733, 737 (Tex. Crim. App. 1991); *see also Custis v. United States*, 511 U.S. 485, 496, 128 L. Ed. 2d 517, 114 S. Ct. 1732 (1994)(discussing *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)).

16

17
*Wolfe*, 560 S.W.2d at 688.

lxcases

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

18 Id.

19 Custis, 511 U.S. at 496.

20 Id.

21 We do not address, at this juncture, whether a claim that a defendant's waiver of counsel was involuntary shares the same quasi-jurisdictional status as a claim that the defendant was indigent, did not waive counsel, and the court failed to appoint one.

22 Even if the record had been complete, appellant's claims would likely be without merit. The plea papers contained the following statement initialed by appellant: "I am an attorney and have knowingly, intelligently, and voluntary [sic] decided to represent myself." Moreover, a document titled "Agreed Setting" contains the written notation "increment wants to repr. self. Administered of rights." These statements would seem to be sufficient to show a valid waiver of counsel; *Muniz v. State*, 851 S.W.2d 238, 255 (Tex. Crim. App. 1993)(Valid waiver of counsel found when the following statement appeared in the plea papers: "I do not wish to have a lawyer represent me at this hearing and will represent myself").

23 See *Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.*, 769 S.W.2d 554, 557-559 (Tex. Crim. App. 1989); *see also* Tex. Code Crim. Proc., Art. 11.07, § 2, Art. 11.08, & Art. 11.09.

24 *Carter v. State*, 641 S.W.2d 557, 557-558 (Tex. Crim. App. 1982)(trial court erred in refusing to allow the defendant to elicit evidence in support of a claim that counsel gave ineffective assistance at the original plea proceedings); *Warren v. State*, 744 S.W.2d 614, 614- 615 (Tex. Crim. App. 1988)(court of appeals erred in refusing to address claim of ineffective assistance of counsel at the original plea proceedings when the issue was litigated at the revocation hearing).

25 See *Carter*, 641 S.W.2d at 557; *Warren*, 744 S.W.2d at 615.

26 *Jordan v. State*, 54 S.W.3d 783, 2001 Tex. Crim. App. LEXIS 54 (Tex. Crim. App. 2001).

The dissent ignores our holding that appellant's claim fails even under the habeas corpus exception formulated under prior law. While trial courts and this Court have habeas corpus jurisdiction, the courts of appeals do not. See Texas Code of Criminal Procedure, Article 11.05. All of the cases from this Court upon which the dissent relies (in her dissenting opinion in *Jordan*) were decided at a time when the courts of appeals possessed no criminal jurisdiction. This Court arguably had the power to treat a claim on direct appeal as a writ of habeas corpus, whether or not that claim was litigated at the trial level, but the courts of appeals have no such authority. To invoke a court of appeals's appellate jurisdiction over habeas corpus matters under the old rule, a defendant must first have invoked the trial court's jurisdiction. Appellant failed to litigate, in any fashion, his claim before the trial court. Without even a "functional" writ of habeas corpus before the trial court, no appellate jurisdiction could lie in the Court of Appeals. Our holding today in *Jordan* is not necessary to the outcome of this case, but we refer to that holding to avoid creating any confusion in the law.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

27 *Taylor v. State*, 10 S.W.3d 673, 681 (Tex. Crim. App. 2000).

28 Id.

29 Id.

30 815 S.W.2d 623, 624-627 (Tex. Crim. App. 1991).

31 *Manuel*, 994 S.W.2d at 662 (emphasis in original).

32 *Taylor*, 10 S.W.3d at 682.

33 Id (equating new rule with "clear break" concept articulated in previous Supreme Court precedent); *Id.* at 678-679 (explaining the "clear break" exception from prior Supreme Court caselaw).

34 815 S.W.2d at 626 n.7 (emphasis added).

35 *Brown v. State*, 943 S.W.2d 35, 42-43 (Tex. Crim. App. 1997)(burden is upon the defendant, in a plea bargain situation, to prove that he was prejudiced by trial court's failure to give deferred adjudication admonishments; failure to appeal at the time deferred adjudication is imposed is some evidence that the lack of admonishments did not affect the voluntariness of the plea); *Martinez v. State*, 981 S.W.2d 195 (Tex. Crim. App. 1998)(on appeal of sentence after adjudication, defendant claimed original plea was involuntary because he was not properly admonished in accordance with Texas Code of Criminal Procedure, Article 26.13; we found that the admonishments substantially complied with the statute and the defendant failed to show harm); *Marin v. State*, 925 S.W.2d 720, 721 (Tex. Crim. App. 1996)(defendant appealed sentence upon adjudication claiming that failure to give deferred adjudication admonishments rendered his original plea involuntary; we held that, in an open plea, a defendant need not be informed prior to his plea of the possible consequences of a violation of deferred adjudication probation); *Ray v. State*, 919 S.W.2d 125 (Tex. Crim. App. 1996)(same); *Price v. State*, 866 S.W.2d 606 (Tex.Crim.App. 1993)(misdemeanor plea not rendered involuntary by failure to give deferred adjudication admonishments).

36 See *Watson v. State*, 924 S.W.2d 711, 714 (Tex. Crim. App. 1996)(plea-bargain for deferred adjudication could, under the appellate rules, result in a limitation on the ability to appeal the sentence imposed upon revocation of deferred adjudication community supervision). Although unnecessary to the disposition of this case, we do note that *Watson* had been decided at the time appellant was given deferred adjudication.

37 *Edwards v. State*, 835 S.W.2d 660, 663 (Tex. App.-Dallas 1992, no pet.).

38 *Smith v. State*, 957 S.W.2d 571, 575-576 (Tex. App.-Dallas 1997, no pet.); *Moss v. State*, 938 S.W.2d 186, 190 (Tex. App.-Austin 1997, pet. ref'd); *Holiday v. State*, 983 S.W.2d 326, 327-328 (Tex.-Houston [1st Dist.] 1996, no pet.)(opinion on rehearing).

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

39

*Alejandro v. State*, 957 S.W.2d 143, 144 (Tex. App.-Corpus Christi 1997, pet. ref'd); *Manuel v. State*, 981 S.W.2d 65, 67 (Tex. App.-Fort Worth 1998), *affirmed*, 994 S.W.2d 658 (Tex. Crim. App. 1999); *Munson v. State*, 987 S.W.2d 905, 906 (Tex. App.-Waco 1999, no pet.).

40

*Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967); *see also Taylor*, 10 S.W.3d at 681.

41

The dissent "disagrees" with our conclusion that a retroactivity analysis is unnecessary because "despite the fact that we never explicitly held that the 'fundamental error rule applied in the context of deferred adjudication, the logic of *Manuel* so dictated since, as noted above, *Manuel's* holding was explicitly predicated on its equating 'regular' community supervision with deferred adjudication for purposes of appeal." Dissent at 2. The dissent misses the point. Appellant's claim in this case is that *Manuel* articulated a new rule, and we have shown that claim to be without merit. While *Jordan* does articulate a new rule – narrowing exceptions to the prohibition against collaterally attacking the original plea upon revocation – we engage in the appropriate retroactivity analysis in that case. And at any rate, appellant's claims fail under the old rule that *Jordan* replaces.

1

The majority also states that "a judgment is void only in very rare situations--usually due to a lack of jurisdiction." *Ante*, at 2001 Tex. Crim. App. LEXIS 52, *6. This statement is questionable in light of the Court's recent decision in *Ex parte Seidel*, 39 S.W.3d 221 (Tex. Crim. App. 2001).

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.