**Opinion issued October 4, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-15-00869-CR

————————————————

## DAVIDETTE JOHNSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Case No. 1397348

## MEMORANDUM OPINION

Davidette Johnson appeals the trial court's judgment adjudicating his guilt and sentencing him to four years' confinement. After Johnson entered a guilty plea to the second-degree felony offense of aggravated assault with a deadly weapon, the trial court placed Johnson on deferred adjudication for three years.

*See* TEX. PENAL CODE § 22.02(b). The State subsequently moved to adjudicate and the trial court granted the motion and adjudicated Johnson's guilt. In two issues, Johnson argues (1) the trial court improperly proceeded to a bench trial without an express waiver of a jury trial when he pleaded guilty; and (2) the trial court abused its discretion in granting the state's motion to adjudicate and revoking his community supervision because Johnson adduced evidence to prove by a preponderance of the evidence that he did not commit a new law violation as alleged. We affirm.

## Background

On January 6, 2014, Johnson pleaded guilty to the offense of aggravated assault with a deadly weapon in exchange for a recommendation from the State that adjudication be deferred and he be placed on community supervision for three years. Approximately one year later, the State moved to adjudicate Johnson's guilt but later dismissed its motion based on the trial court's amendments to the conditions of Johnson's community supervision.

In July 2015, the State filed a second motion to adjudicate guilt. The State alleged that Johnson violated the conditions of his community supervision in June 2015 by committing an offense against the laws of Texas—intentionally and knowingly causing bodily injury to Alexis Lundy, a person with whom Johnson had a dating relationship, by kicking her with his foot.

2

The trial court held a hearing on the State's motion at which Johnson pleaded not true to the State's allegation. Sarah Marie Wood, an eyewitness who did not know Johnson or Lundy, testified that she was driving when she noticed Johnson kicking the abdominal area of a small statured African American female who was lying on the ground of a parking lot. According to Wood, Johnson had his hands firmly planted on the wall of a building to allow him to forcibly kick the woman and she saw him kick the woman twice. Wood called 911 and drove closer. She testified that she saw Johnson pursue the woman as she walked away and pin her to a dumpster when she fell. From less than 50 yards away, Wood saw Johnson strike the woman three times behind the dumpster. Wood testified that she stayed on the phone with 911 until an officer arrived, at which time she identified Johnson as the man who assaulted the woman.

Deputy R. Pierre of the Harris County Sheriff's Department responded to Wood's 911 call. She testified that, upon arriving on the scene, she saw Johnson standing over and yelling at Lundy, who was on the ground. Pierre testified that she did not notice any physical injuries or marks on Lundy, but Lundy was crying and holding herself in different areas as if she was hurt. Pierre testified that Lundy's and Wood's statements conflicted. Lundy told Pierre that she had a condition that made her fall, but Pierre noted that Lundy's story changed "quite a bit" and that "she stated other things as well." Pierre explained that she ultimately

3

arrested Johnson because he was being non-compliant and aggressive towards her, and because his appearance matched that which she had received on the call note.

Lundy also testified at the hearing. She testified that she was currently in a relationship with Johnson and had been in a relationship and living with him on the date of the alleged assault. Lundy testified that shortly before the alleged assault, she had injured her knee, sought medical treatment, and determined that she had torn ligaments. Lundy testified that she continued to suffer from difficulties after the injury, which included her knee "giving out on her" or "buckling," causing her to fall, which is what had happened on the night of the alleged assault. Johnson introduced Lundy's medical records related to the knee injury.

According to Lundy, on the day of the alleged assault, she and Johnson were coming home from a friend's house and were arguing in a dark parking lot when her knee buckled and she fell to the ground. Lundy further testified that after she got up and began walking again, her knee buckled again and she fell a second time. Lundy testified that each time she fell, Johnson reached down to help her get up. She stated that Johnson never kicked or assaulted her, that Johnson was not a violent person, and that she did not want to see him go to prison.

The trial court granted the State's motion to adjudicate Johnson's guilt and sentenced Johnson to four years' confinement. Johnson appealed.

**Jury Waiver**

In his first issue, Johnson asserts that the trial court's judgment should be reversed because he did not properly waive his right to a jury trial when he pleaded guilty to the aggravated assault with a deadly weapon charge for which he originally was placed on deferred adjudication.

## A.    Applicable Law

A defendant placed on deferred adjudication community supervision may only raise issues relating to the conviction in appeals taken when community supervision is originally imposed. *Nix v. State,* 65 S.W.3d 664, 667 (Tex. Crim. App. 2001); *Manuel v. State,* 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999). Generally, the defendant may not appeal errors in the original proceeding that resulted in the deferred adjudication after a later proceeding to adjudicate guilt. *Nix,* 65 S.W.3d at 667; *Manuel,* 994 S.W.2d at 661–62.

## B.    Analysis

Johnson is appealing from a judgment entered after the revocation of a deferred adjudication community supervision order. His complaint on appeal is that he never waived his right to a jury trial in the original proceeding in which he entered a guilty plea and received deferred adjudication and, thus, the trial court's judgment should be reversed and he should be granted a new trial. The issue of whether Johnson made a valid waiver of his right to a jury trial during the original

plea proceeding could only be raised in an appeal from the original deferred adjudication order. *See* TEX. R. APP. P. 26.2(a)(1); TEX. CODE CRIM. PROC. art. 42.12, § 23(b) (defendant's right to appeal conviction and punishment accrues when defendant is placed on community supervision). We therefore lack jurisdiction to consider this complaint in this appeal from the judgment adjudicating Johnson's guilt. *Nix,* 65 S.W.3d at 667 (with very limited exceptions, "the original plea cannot be attacked on appeal of the revocation proceedings"); *Manuel,* 994 S.W.2d at 662 (noting that it was not intent of legislature to "permit *two* reviews of the legality of a deferred adjudication order, one at the time deferred adjudication community supervision is first imposed and another when, and if, it is later revoked"); *see also Ulloa v. State*, 370 S.W.3d 766, 769 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("If . . . a defendant wishes to raise issues related to his plea or deferred adjudication, he must do so on direct appeal from the deferred-adjudication order immediately after it is imposed; he may not wait until after he violates the terms of his probation and is found guilty."); *Arreola v. State*, 207 S.W.3d 387, 390 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("A defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding, such as evidentiary sufficiency, only in appeals taken when deferred adjudication is first imposed.").

Johnson cites *Ex Parte Lyles*, 891 S.W.2d 960 (Tex. Crim. App. 1995) in

6

support of his argument that he is entitled to a new trial. In *Lyles*, the Court of Criminal Appeals granted a post-conviction application for a writ of habeas corpus and held that the applicant did not expressly waive his right to a jury trial where he was convicted and sentenced at a bench trial for theft. *Lyles*, 891 S.W.2d at 961. But *Lyles* is inapposite because it did not involve an appeal of a revocation proceeding in which the appellant sought to attack the original plea proceeding that resulted in deferred adjudication community supervision. *Id*. Because Johnson is challenging the original plea proceeding in an appeal from a revocation proceeding, we lack jurisdiction to address Johnson's first point of error. *See Manuel,* 994 S.W.2d at 660 (finding that court lacked jurisdiction because appellant was required to appeal issues related to his plea proceeding that led to deferred adjudication order when he was placed on community supervision).

We overrule Johnson's first issue.

### Sufficiency of the Evidence

In his second issue, Johnson contends that the trial court abused its discretion in finding that he violated the terms of his community supervision and adjudicating his guilt.

### A. Applicable Law

In a revocation case, the State has the burden of establishing a violation of the conditions of community supervision by a preponderance of the evidence.

*Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)); *see also Duncan v. State*, 321 S.W.3d 53, 57 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd). The trial judge is the sole trier of the facts and determines the credibility of the witnesses and the weight to be given to their testimony. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); *Amado v. State*, 983 S.W.2d 330, 332 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Appellate review of an order revoking community supervision and adjudicating guilt is limited to determining whether the trial court abused its discretion in determining that the defendant violated the terms of his community supervision. *Rickels*, 202 S.W.3d at 763; *Duncan*, 321 S.W.3d at 56–57. On appeal, we examine the evidence in the light most favorable to the trial court's order. *Duncan*, 321 S.W.3d at 57.

**B.    Analysis**

The trial court heard conflicting testimony regarding Johnson's alleged new law violation. Wood testified that she saw Johnson kick Lundy twice in the abdomen as she laid on the ground, pursue Lundy after she got up and limped away, pin Lundy to a dumpster when she fell, and then strike her multiple times. Lundy, however, testified that Johnson never kicked or assaulted her and that she fell to the ground twice as a result of a knee condition that caused her legs to buckle.

As the sole trier of fact, it was within the trial court's discretion to judge the credibility of the witnesses. *See Amado*, 983 S.W.2d at 332. Viewing the evidence in a light most favorable to the revocation decision, as we must, the evidence supports the trial court's finding that Johnson violated a condition of his deferred adjudication community supervision by committing a new law violation—assaulting Lundy. Thus, we hold that the trial court did not abuse its discretion in finding the allegation true and adjudicating Johnson's guilt. *See Story v. State,* 614 S.W.2d 162, 164 (Tex. Crim. App. 1981) (no abuse of discretion where trial court resolved conflicting facts against appellant); *Amado*, 983 S.W.2d at 333 (trial court did not abuse its discretion in revoking appellant's probation on ground that he violated the law because, "[a]lthough there was conflicting evidence in this case, reconciliation of those conflicts was within the exclusive province of the trier of fact").

We overrule Johnson's second issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. PROC. 47.2(b).