

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00024-CR

JORDAN JERMAINE THOMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 20F-0611-202

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

Jordan Jermaine Thompson appeals his conviction for evading arrest and the ten-year prison sentence imposed following the revocation of his community supervision.[1] The modified terms of Thompson's community supervision required that he attend a residential substance abuse treatment program. Thompson did not attend. Thompson asserts that nonattendance cannot be used against him. Though Thompson signed an agreed order requiring him to attend residential substance abuse treatment, he asserts that he changed his mind before the trial court signed that order. Thompson asserts that the residential treatment term or condition of community supervision is therefore void, making revocation based on that term likewise void.

We find that the modification order is not void. We, therefore, affirm the subsequent revocation and the resulting ten-year sentence.

## I.      Factual Background

On September 2, 2020, pursuant to a plea agreement regarding the third-degree-felony offense of evading arrest with a motor vehicle, the trial court sentenced Thompson to ten years' imprisonment, but suspended his sentence in favor of placing him on community supervision for five years. *See* TEX. PENAL CODE ANN. § 38.04 (Supp.). The original terms of community supervision provided:  "The Defendant is hereby advised that, under the laws of the State of Texas, the Court shall determine the conditions of community supervision and may, at any time during the period of supervision, alter or modify the conditions of supervision."

---

[1]The trial court also ordered the sentence to run consecutively with the sentence in Thompson's companion case, numbered 06-24-00025-CR, in which he appeals a separate conviction for evading arrest with a prior conviction and which is or will be the subject of a separate opinion.

By December 7, 2023, the State had filed several motions to revoke Thompson's community supervision. Thompson was in the Bowie County Jail and was facing an upcoming hearing on the latest motion to revoke. To resolve that motion, the State offered Thompson the option of attending a residential substance abuse treatment program. Thompson's community supervision officer, Monica Longtin, met with Thompson in jail to discuss that option. Thompson signed an "Agreed Order Modifying Terms and Conditions of Probation," which provided that, "pursuant to Article 42A of the Texas Code of Criminal Procedure," Thompson would attend a residential substance abuse treatment program in Uvalde, Texas, for a minimum of six months, and up to twenty-four months. Immediately above Thompson's signature, the agreed order provides: "I have read and agree to the above Modifications of the conditions of probation. I acknowledge this acceptance by my signature below."

After Thompson signed the agreed order, he changed his mind. Thompson agreed that Longtin "went over" the agreed order with him. Thompson testified that Longtin explained that the agreed order represented Thompson's consent, but that it was consent to have a conversation about treatment, not consent to treatment itself. Thompson testified that he signed the agreed order first, and then read it. Thompson testified that, upon reading the agreed order, he understood that it represented his consent to treatment. Thompson testified to his dissatisfaction with the range of six to twenty-four months. Thompson testified that Longtin could not say how long the treatment would be. Thompson testified that he told Longtin that he did not agree. Longtin told Thompson she would inform his counsel that he had changed his mind.

3

At the hearing on December 12, 2023, the trial court signed the agreed order. The agreed order was also signed by Thompson's counsel on December 12, 2023.

On December 13, 2023, the Bowie County Sheriff's Office was transporting Thompson to the treatment facility in Uvalde, Texas, and while in route, Thompson spoke with the transporting officers. Thompson testified that he never "refused" treatment in so many words. Whatever Thompson said, one of the male transporting officers told Thompson: "[W]ell, if you don't want to be there, we can't keep you." The female transporting officer made a call within Thompson's earshot to the effect that Thompson did not want to be in Uvalde, so he was being brought back. The female officer's call was to another female. That same day, December 13, 2024, Longtin submitted a status report recommending that Thompson's community supervision be revoked.

On December 22, 2023, the State filed the motion to revoke that is the subject of this appeal. The motion to revoke cited Thompson's failure to attend a residential substance abuse treatment program.

On January 10, 2024, the trial court held a hearing on the December 22, 2023, motion to revoke. The trial court heard the testimony set forth above regarding the jailhouse interaction between Thompson and Longtin about the agreed order and, likewise, heard the testimony regarding Thompson's travel to and from Uvalde. Having heard that testimony, the trial court found that Thompson had failed to comply with the terms of his community supervision by refusing to attend a court-ordered residential substance abuse treatment program. The trial court, therefore, revoked Thompson's community supervision and sentenced him to ten years in prison.

4

## II.    Contentions of the Parties

Thompson contends that the agreed order of December 12, 2023, is void. Thompson contends that the agreed order was not actually agreed to, because Thompson had withdrawn his agreement before the trial court signed the order. Thompson contends that residential substance abuse treatment could not be added as a term of community supervision unless he agreed to that term following an admonishment consistent with what a defendant would receive before making a guilty plea. Thompson contends that he did not need to object to a void order. Thompson, though, did not provide authority that would indicate that, on these circumstances, the trial court's order is void. Thompson does not put forward a standard of review for use in assessing his contentions.

The State contends that Thompson failed to preserve his issue for appeal and that, in any event, a trial court may unilaterally modify the terms of community supervision pursuant to Article 42A.051(b) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.051(b). The State specifically contends that the trial court had not delegated authority to modify the terms of Thompson's community supervision pursuant to Article 42A.052 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.052 (Supp.). The State responds to Thompson's arguments rooted in plea-agreement authority by asserting that those authorities do not apply to community supervision, whether regarding modification of the terms of community supervision, or regarding revocation of community supervision. Other than restating Thompson's sole issue, the State does not directly address the question of

voidness. The State urges that the standard of review is abuse of discretion, with the evidence viewed in the light most favorable to the trial court's order.

## III.    Preservation

"Preservation is a systemic issue that a first-tier appellate court must raise on its own before granting relief on a claim." *Wood v. State*, 693 S.W.3d 308, 323 (Tex. Crim. App. 2024). In other words, if we did not address preservation, Thompson's appeal would be doomed from the outset. *See id.*

As a starting point, "[t]here is no legislative authority for entertaining a direct appeal from an order modifying the conditions of community supervision." *Davis v. State*, 195 S.W.3d 708, 710 (Tex. Crim. App. 2006). That said, "[a] complaint about a modification can . . . be raised in an appeal from a revocation *if* the validity of the revocation depends on the validity of the modification." *Id.* (emphasis added). That is the gravamen of Thompson's complaint. In theory then, this appeal is an appropriate vehicle for Thompson to complain of the modification underlying the revocation. However, the general rule still applies: "An appellant fails to preserve error by failing to object when he had the opportunity; conversely, if an appellant never had the opportunity to object, then he has not forfeited error." *Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013); *see Davis*, 195 S.W.3d at 710–11 (citing *Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003)) ("We held that Rickels was entitled to complain about the added condition of probation at [revocation] because he had *no opportunity to object at the time it was imposed*." (emphasis added)).

Here, Thompson's counsel signed the agreed order at the time the modified condition of community supervision was imposed. On appeal, Thompson contends that the agreed order is void and that, therefore, no objection was required.

We, therefore, proceed to analyze Thompson's issue on the ground asserted: voidness.

This is permissible because "[a] void judgment is a nullity and can be attacked at any time." *Nix v. State*, 65 S.W.3d 664, 667–68 (Tex. Crim. App. 2001) (citation omitted), *abrogated on other grounds by Wright v. State*, 506 S.W.3d 478 (Tex. Crim. App. 2016).

## IV. Standard of Review

Voidness is a question of law reviewed de novo. *Armstrong v. State*, 805 S.W.2d 791, 793 (Tex. Crim. App. 1991).

## V. Analysis

"Texas trial courts are afforded 'broad discretion' in devising terms of community supervision." *Cochran v. State*, 563 S.W.3d 374, 378 (Tex. App.—Texarkana 2018, no pet.) (quoting *Butler v. State*, 189 S.W.3d 299, 303 (Tex. Crim. App. 2006)).

"The void judgment exception recognizes that there are some rare situations in which a trial court's judgment is accorded no respect due to a complete lack of power to render the judgment in question." *Nix*, 65 S.W.3d at 667. The list of circumstances is short where a judgment of conviction is void. *Wright v. State*, 506 S.W.3d 478, 481–82 (Tex. Crim. App. 2016) (citing *Nix*, 65 S.W.3d at 668 ("While we hesitate to call this an exclusive list, it is very nearly so.")). *Wright* enumerated the following:

> (1) the document purporting to be a charging instrument does not satisfy the constitutional requisites of a charging instrument, (2) the trial court lacks subject

7

matter jurisdiction over the offense charged, (3) the record reflects that there is no evidence (not merely insufficient evidence) to support the conviction, and (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived in violation of the right to counsel for indigent defendants.

*Id.* at 842 n.26.

Thompson relies on *Ex parte Gibauitch* for the proposition that, before the imposition of the modified term of community supervision, he should have received an admonishment of the sort given before a plea of guilt. *See Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985) (per curiam) (orig. proceeding). It is doubtful that this is so. Even if this were so, "the assessment of a particular condition of community supervision will not ordinarily implicate an *absolute* feature of the system, not optional with the parties, in the same way that a sentence that is manifestly outside the statutorily applicable range of punishment does." *Gutierrez v. State*, 380 S.W.3d 167, 175 (Tex. Crim. App. 2012) (emphasis added); *see Speth v. State*, 6 S.W.3d 530, 534–35 (Tex. Crim. App. 1999).[2]

At the January 10, 2024, hearing, the State asked open-ended questions that held out the possibility, even then, of Thompson going to residential substance abuse treatment: "What is it

---

[2]In *Speth*, the court held:

> An award of community supervision is not a right, but a contractual privilege, and conditions thereof are terms of the contract entered into between the trial court and the defendant. Therefore, conditions not objected to are affirmatively accepted as terms of the contract. Thus, by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract. A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable. A trial objection allows the trial court the opportunity to either risk abusing his discretion by imposing the condition over objection or reconsider the desirability of the contract without the objectionable condition.

*Speth*, 6 S.W.3d at 534–35 (footnotes omitted).

8

that you want? Do you want to go to treatment?" Through a series of responses, Thompson expressed openness to the idea, if the treatment were only six months. Thompson expressed dissatisfaction with treatment that could last as long as twenty-four months. Ultimately, when presented with a yes-or-no option on twenty-four months, Thompson declined. The trial court could have viewed this exchange as informative regarding Thompson's exchange with Longtin on December 7, 2023. In other words, the trial court could have viewed Thompson's signature on the agreed order as an agreement, followed thereafter by an ill-fated attempt to negotiate for a shorter duration of treatment. In any event, Thompson's counsel signed the agreed order, and there was no objection pending before the trial court when the trial court signed the agreed order.

Accordingly, the facts here do not give rise to a circumstance where the modified condition, and hence the revocation, is void as a matter of law.

The trial court's discretion regarding the terms of community supervision is broad.

## VI. Disposition

We affirm the trial court's judgment.[3]

Jeff Rambin
Justice

Date Submitted:   August 8, 2024
Date Decided:   December 12, 2024

Do Not Publish

---

[3]In his brief, Thompson notes that

> the burden is upon the State to prove by a preponderance of the evidence that the probationer has committed the breach or breaches alleged in [the State]'s motion to revoke probation, and where the State fail[ed] to meet this burden of proof, the trial court is without authority to revoke the probation involved.

(Citations omitted).

To the extent, if any, Thompson raises an issue about the sufficiency of the evidence, it is overruled under an abuse-of-discretion standard viewing the evidence in the light most favorable to the order on appeal. *See Cunningham v. State*, 673 S.W.3d 280, 286 (Tex. App.—Texarkana 2023, no pet.). The trial court, as the sole fact-finder, was free to reject Thompson's testimony that he was unaware of what he signed. Instead, the trial court could have found that Thompson had made the agreement, both orally and in writing, but after some maneuvering, ultimately decided not to participate in the treatment program. By signing the agreed order, Thompson obtained the benefit of forestalling revocation in December 2023. That is a benefit he sought to maintain at the hearing in January 2024: "I ain't never refused treatment. I ain't never refused help from probation." "I ain't never" could rationally be perceived as an admission that Thompson's post-signature statements to Longtin were not an outright refusal. In other words, the trial court could have rationally perceived Thompson as trying to have his cake (agreeing to treatment) and eat it too (negotiating his agreement to something less than twenty-four months). Given that Thompson, and his attorney, signed the agreed order, and further given that there was no objection to the agreed order at the time it was entered, we cannot say that the trial court abused its discretion by imposing the treatment term. As for Thompson's compliance, or lack thereof, a preponderance of the evidence established that Thompson failed to comply with the modified term of his community supervision, which required successful completion of the treatment program.

10