# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-23-00380-CR
NO. 03-23-00381-CR

---

**Christopher West Lopez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 427TH DISTRICT COURT OF TRAVIS COUNTY**
**NOS. D-1-DC-15-205012 & D-1-DC-15-100158, THE HONORABLE TAMARA NEEDLES,**
**JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Christopher West Lopez challenges the adjudications of guilt and his sentences in two criminal cases for the felony offenses of first-degree aggravated kidnapping and second-degree aggravated assault with a deadly weapon. *See* Tex. Penal Code §§ 20.04, 22.02. We affirm the trial court's judgments adjudicating guilt.

## BACKGROUND

Lopez was charged with aggravated kidnapping, aggravated assault family violence, endangering a child, and evading arrest. *See id.* §§ 20.04, 22.02, .041, 38.04. Consistent with a plea-bargain agreement, the trial court, in mid-2016, accepted Lopez's guilty pleas, deferred the adjudication of guilt for the aggravated-kidnapping and aggravated-assault offenses, placed him on deferred-adjudication community supervision for ten years for those offenses, and

sentenced him to eighteen months in a state jail for the endangering offense, taking into consideration the evading arrest offense. *See* Tex. Code Crim. Proc. art. 42A.101; Tex. Penal Code §§ 12.35, 12.45. Subsequently, the State filed motions to adjudicate Lopez's guilt alleging violations of the terms of his deferred-adjudication community supervision, including: that he "[f]ailed to report to the Supervision Officer on October 9, 2020, October 23, 2020, November 4, 2020, December 29, 2020, and each month thereafter," and that he had committed multiple criminal offenses. Lopez filed an application for writ of habeas corpus challenging the voluntariness of his guilty pleas. Following a hearing, the trial court denied Lopez's writ application.[1] Lopez moved for a stay of the adjudication proceedings pending appellate review of the denial of his requested habeas relief. The trial court denied the stay and the adjudication hearing proceeded.

The State called Probation Officer Samantha Berry. She testified that she had never met with Lopez, but that she was familiar with his probation file and helped prepare the amended motion to revoke after getting the case reassigned to her from a previous probation officer. She testified that she attempted to set up a meeting with Lopez in December 2020 by sending a letter, which was returned to sender, and through an automated text. She was not able to meet with him and sent his file to the "absconder unit." She testified that Lopez had missed three scheduled meetings prior to her taking over the case.

Berry testified that the last time Lopez checked in with the department was July 9, 2020, and was by phone. The previous probation officer assigned to Lopez's case sent "failure to

---

[1] Lopez appealed the trial court's order denying his requested habeas relief, and we affirmed the trial court's order. *Ex parte Lopez*, No. 03-23-00272-CR, 2023 WL 8262832, at *1 (Tex. App.—Austin Nov. 30, 2023, no pet.) (mem. op., not designated for publication).

report letters," spoke with Lopez's family members, and helped file a motion to revoke in October 2020. According to letters returned to the department, Lopez was no longer residing at the address that was on file with the department. Lopez's phone number on file with the department had been disconnected.

Berry testified that Lopez had been "consistently" reporting since July 2016, when he was placed on deferred adjudication community supervision. Lopez had successfully completed a 36-week Batterer's Intervention Program and outpatient counseling, and all of his drug screens except one had been negative. She was not sure if he had completed his community service but testified that due to "the Covid shutdown" the department had been waiving that requirement. She testified that Lopez's "pattern of absconding started" around the same time that the department received calls from unspecified individuals notifying the department that Lopez was expressing that he was getting frustrated about continuing community supervision because he believed he was going to jail.

On cross-examination, Berry was asked if there was anything in the record about the department being informed about Lopez suffering from "a carbon monoxide poisoning" around April 2020 that could have explained his failure to report. Berry explained that there was no mention in the file about that but that Lopez had reported to an office visit with the department on April 7, 2020; that his last attended appointment with the department was by phone on July 9, 2020; that he was scheduled for a September appointment; that Lopez was arrested in September 2020 "for a number of things"; and that the last time the department spoke with him was on a phone call on October 5, 2020. Berry was asked whether she had checked if Lopez was in custody at the time he missed appointments. Berry responded that after Lopez failed to report to her in

3

December 2020, she checked to see if Lopez was in custody prior to filing the amended motion to revoke.[2]

The State also alleged, and presented evidence to support the allegations, that Lopez had committed multiple subsequent criminal offenses, including multiple aggravated robberies and aggravated assaults, deadly conduct, and felon in possession of a firearm. The defense offered, and the trial court admitted, a psychological evaluation report of Lopez that was conducted by Doctor John Fabian. The report mentioned that Lopez had told Dr. Fabian about experiencing a medical emergency involving carbon-monoxide poisoning in April 2021.

The trial court found several of the State's allegations true, including that Lopez failed to report to the Supervision Officer on October 9, 2020, October 23, 2020, November 4, 2020, December 29, 2020, and each month thereafter, and adjudicated guilt. The trial judge explained at the hearing that she believed Lopez had violated the terms of his probation for both cases, including by "not reporting" and "potentially being involved in any one of these events that we're discussing." The trial judge explained that she could revoke and adjudicate on "any one" of the violations. The trial court adjudicated guilt and sentenced Lopez to 20 years' imprisonment for each offense. Lopez appealed.

---

[2] Specifically, the following exchange took place,

[Defense counsel:] Do y'all check the records to determine whether a probationer has been taken into custody? Would that be reflected in your file to account for some of the missed appointments that he was actually in custody?

[Berry:] December 29th, after he failed to report, I requested an updated criminal history and warrant check because we do that just to make sure, you know, someone is not somewhere. So, yes, that was done by me. . . . Before I filed the amended.

# JURISDICTION

In his first issue, Lopez contends that the trial court erred by not granting his motion to stay the adjudication proceedings pending the resolution of his habeas appeal. He contends that the trial court did not have jurisdiction to adjudicate while his 11.072 habeas appeal was pending because article 11.32 of the Texas Code of Criminal Procedure transfers jurisdiction between courts in such a case. *See* Tex. Code Crim. Proc. arts. 11.072 (establishing procedure for application for writ of habeas corpus in community supervision cases), 11.32.

Article 11.32 of the Texas Code of Criminal Procedure, which is titled "Custody pending examination," provides:

> When the return of the writ has been made, and the applicant brought before the court, he is no longer detained on the original warrant or process, but under the authority of the habeas corpus. The safekeeping of the prisoner, pending the examination or hearing, is entirely under the direction and authority of the judge or court issuing the writ, or to which the return is made. He may be bailed from day to day, or be remanded to the same jail whence he came, or to any other place of safekeeping under the control of the judge or court, till the case is finally determined.

Lopez contends that Article 11.32 "contrasts 'the authority of the habeas corpus' with 'the original warrant or process'" and reasons that the statute therefore required the trial court to stay the adjudication proceedings until his habeas appeal was decided. However, "[a] habeas corpus proceeding has always been regarded as separate from the criminal prosecution." *Greenwell v. Court of Appeals for Thirteenth Jud. Dist.*, 159 S.W.3d 645, 649 (Tex. Crim. App. 2005); *see Ex parte Sheffield*, 685 S.W.3d 86, 100 (Tex. Crim. App. 2023) (concluding that rule that automatically stays habeas proceedings in trial court during pendency of appeal only applies to habeas proceedings and not to underlying criminal prosecution); *cf. Kniatt v. State*, 206 S.W.3d 657,

663–64 (Tex. Crim. App. 2006) (holding that trial court did not lose jurisdiction to hear appellant's pre-conviction writ application once that court adjudicated him guilty). This distinction remains when the habeas applicant invokes the trial court's habeas jurisdiction during the pendency of the State's motion to revoke probation. *See Jordan v. State*, 54 S.W.3d 783, 786 (Tex. Crim. App. 2001) (noting that "nothing prevents the trial court from considering the [habeas] application along with the State's motion to revoke probation"). Thus, we conclude that the trial court did not lose jurisdiction over the revocation proceedings during the pendency of Lopez's habeas appeal.[3] *See Ex parte Sheffield*, 685 S.W.3d at 100 ("We reaffirm that a habeas proceeding is a separate proceeding from a criminal prosecution."). We overrule Lopez's first issue.

**LEGAL SUFFICIENCY OF EVIDENCE SUPPORTING ADJUDICATION ORDER**

In three issues on appeal, Lopez challenges the trial court's adjudication of guilt based on sufficiency of the evidence for several of his alleged subsequent offenses.[4] However, Lopez does not challenge the trial court's finding that the State met its burden of proof on its allegation that he failed to report. *See Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (concluding that proof of violation of single condition of community supervision was sufficient to

---

[3] Two of our sister courts have reached this same conclusion. *See Patrick v. State*, No. 11-17-00075-CR, 2018 WL 1867055, at *3 (Tex. App.—Eastland Apr. 19, 2018, pet. ref'd) (mem. op., not designated for publication); *In re Victorick*, No. 09-13-00550-CR, 2013 WL 6885130, at *1-2 (Tex. App.—Beaumont Dec. 30, 2013, orig. proceeding) (mem. op., not designated for publication).

[4] Specifically, in his second issue, Lopez contends that the offense of possession of a firearm by a felon—which was one of the alleged subsequent offenses—is unconstitutional. In his third issue he contends that various findings by the trial court regarding his violation of his deferred-adjudication community supervision based on the alleged subsequent offenses are based on legally insufficient evidence. In his fourth issue, Lopez contends that that the trial court erroneously admitted evidence that was offered in support of one of the alleged subsequent offenses.

support revocation); *Baxter v. State*, 936 S.W.2d 469, 472 (Tex. App.—Fort Worth 1996, pet. dism'd) (concluding that sufficient evidence supported revocation because defendant failed to challenge second ground for revocation). Since any one violation could support a revocation, we first turn to the allegations of the failure to report.

Appellate courts review a decision to adjudicate guilt in the same way that courts review a community-supervision revocation in which the adjudication of guilt was not deferred. *See* Tex. Code Crim. Proc. art. 42A.108(b); *Leonard v. State*, 385 S.W.3d 570, 572 n.1 (Tex. Crim. App. 2012) (explaining that adjudication hearing is governed by same rules as hearing to revoke community supervision and "is, in practical terms, a hearing on whether to revoke the defendant's deferred adjudication community supervision"). A trial court's decision to revoke community supervision is reviewed under an abuse-of-discretion standard of review. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). We review issues in probation revocation cases, including sufficiency issues, for whether the trial court abused its discretion. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013).

An order that revokes community supervision must be supported by a preponderance of the evidence, *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984), and appellate courts review the evidence presented during the hearing in the light most favorable to the trial court's ruling, *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). A fact is proven by a preponderance of the evidence if the greater weight of the credible evidence creates a reasonable belief that it is true. *See Hacker*, 389 S.W.3d at 865. The trial court at a probation revocation hearing "is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Id.*

7

"When the State has failed to meet its burden of proof, the trial judge abuses [her] discretion in issuing an order to revoke probation." *Cardona*, 665 S.W.2d at 493–94. But proof of the violation of a single condition of community supervision is sufficient to support revocation. *See Garcia*, 387 S.W.3d at 26; *Atchison v. State*, 124 S.W.3d 755, 758–59 (Tex. App.—Austin 2003, pet. ref'd) (observing that any one of alleged violations "would support the decision to adjudicate" (citing *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979))). Thus, "to prevail on appeal, the defendant must successfully challenge all of the findings that support the revocation order." *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Here, the State alleged that Lopez failed to report "to the Supervision Officer on October 9, 2020, October 23, 2020, November 4, 2020, December 29, 2020, and each month thereafter." The trial court found that allegation to be true. One of the conditions of Lopez's community supervision was that he "[r]eport to the supervision officer as directed by the judge or the supervision officer." At the adjudication hearing, the probation officer that took over Lopez's probation file in December 2020 testified that she was familiar with his file; that he had failed to report for three months prior to her taking over; and that the prior probation officer had made unsuccessful attempts to reach Lopez through his last known address, phone number, and family contacts. Although the probation officer testified that Lopez had been arrested in September 2020, there was no evidence presented that he had been in custody during the missed appointments in October through December of 2020, and the probation officer testified that there had been an October 5, 2020 phone call between Lopez and the department and that she checked that he was not in custody when attempting to locate him in late December 2020. Further, she testified that according to his file, individuals had contacted the department and expressed concern that Lopez

8

was becoming frustrated with complying with the reporting requirements because he believed he was going to go to jail. Additionally, although there was mention of a carbon-monoxide poisoning that may have affected Lopez's ability to report in April 2020, Lopez's file indicated that he had reported in June 2020 without mentioning any hospital visit or carbon-monoxide poisoning and that he had spoken with the department on October 5, 2020. Further, the psychological report offered by the defense indicated that Lopez stated that the poisoning occurred in 2021, not in 2020.

We conclude that there was sufficient evidence presented to support the trial court's finding that Lopez failed to report, and need not analyze his remaining sufficiency issues. *See Hendley v. State*, 783 S.W.2d 750, 752 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (concluding that evidence of failure to report was sufficient to support revocation when probation officer testified to three months in which defendant failed to report and there was no evidence presented of any excuse for failing to report for two of those months). We cannot conclude that the trial court abused its discretion. *See Hurd v. State*, 483 S.W.2d 824, 825 (Tex. Crim. App. 1972) (concluding that there was no abuse of discretion when record reflected that defendant "failed, without valid explanation, to report to his probation officer as directed"); *Hendley*, 783 S.W.2d at 752 (explaining that "[f]ailure to report constitutes sufficient grounds for revocation of probation"). We overrule Lopez's sufficiency challenges.

## ASSISTANCE OF TRIAL COUNSEL

In his final issue, Lopez contends that his trial counsel provided ineffective assistance by failing to object to the "grossly disproportionate sentence" assessed by the trial court.

To prevail on his claim of ineffective assistance of counsel, Lopez must prove by a preponderance of the evidence that: (1) his counsel's performance was deficient, and (2) the

9

deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999). The review of a trial counsel's representation on an ineffective-assistance challenge is highly deferential to counsel's professional judgment. *Strickland*, 466 U.S. at 689.

To meet the first prong of the *Strickland* test, Lopez must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* "[A]ny allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Generally, a reviewing court will not speculate about counsel's trial strategy. *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). When there is an absence of evidence in the record of counsel's reasons for the challenged conduct, we "will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). "A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. Generally, the proper avenue for developing the record on an ineffective-assistance claim is in a habeas corpus proceeding or in a motion for new trial hearing. *Jensen v. State*, 66 S.W.3d 528, 542 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Lopez contends that his trial counsel should have "presented a comparative sentence analysis to the trial court" and that if trial counsel had done so, "it would have been readily apparent that twenty years was a grossly disproportionate sentence in violation of the Eighth Amendment of the United States Constitution and Article I, Section 13, of the Texas State Constitution." Generally, a punishment assessed within the statutory limits is not considered

10

excessive, cruel, or unusual. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). However, "in the exceedingly rare or extreme case" in which a punishment that is within the statutory range is "grossly disproportionate," a defendant may seek relief through a "disproportionate punishment" claim, which "is embodied in the Constitution's ban on cruel and unusual punishment." *Id.* at 322 (citing U.S. Const. amend. VIII). In deciding whether a defendant's sentence is grossly disproportionate, a court must first "judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Id.* at 323. If the court determines that a sentence is "the rare case in which this threshold comparison leads to an inference of gross disproportionality," then the court should conduct a comparative analysis in which it "compare[s] the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.*

Although Lopez contends that there could be no reasonable trial strategy for trial counsel not objecting to the sentence, Lopez's sentences of 20 years' imprisonment for first-degree aggravated kidnapping and second-degree aggravated assault with a deadly weapon are both within the statutory punishment ranges. *See* Tex. Penal Code §§ 12.32, .33, 20.04, 22.02; *Simpson*, 488 S.W.3d at 323 (explaining that Texas courts have "traditionally held that punishment assessed within the statutory limits . . . is not excessive, cruel, or unusual"). Further, there is no evidence in the record regarding what a comparative analysis for Lopez's sentences would demonstrate. *See Thompson*, 9 S.W.3d at 814 (explaining that "any allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness"). Notably, the failure to raise a meritless objection is not deficient performance. *See Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980). On this record, we cannot

conclude that the challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Garcia*, 57 S.W.3d at 440.

Thus, we conclude that there is insufficient basis in the present record to overcome the presumption that counsel exercised reasonable professional judgment. *See Strickland*, 466 U.S. at 689. Accordingly, we overrule Lopez's final issue.

## CONCLUSION

Because we have overruled all of Lopez's issues, we affirm the trial court's judgments adjudicating guilt.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   June 11, 2025

Do Not Publish